[S. F. No. 3514.   Department Two.—November 20, 1905.]

## AUGUSTUS D. AVERY, Respondent, v. EVELYN C. AVERY, Appellant.

DIVORCE—EXTREME CRUELTY—CORROBORATIVE EVIDENCE.—In an action for a divorce on the ground of extreme cruelty consisting of successive acts of ill-treatment, it is not necessary, in order to sustain a judgment for the plaintiff, that there should be direct testimony of other witnesses to every act sworn to by the plaintiff; it is sufficient corroboration if a considerable number of important and material facts are so testified to by other witnesses, or there is other evidence, circumstantial or direct, which strongly tends to

strengthen and confirm the statements of the plaintiff. The main purpose of section 130 of the Civil Code is to prevent collusion; and this is so, although the truth of the statements of the plaintiff and his witnesses upon which the findings are based are denied by the defendant.

ID.—GRIEVOUS MENTAL SUFFERING.—Under section 94 of the Civil Code, defining extreme cruelty, it is not necessary that there should be the infliction of bodily injury. A course of conduct which entails grievous mental suffering alone is sufficient, and whether in any case the course of conduct complained of constitutes "grievous mental suffering" is a question of fact, to be determined from the facts considered in connection with the character, temperament, and disposition of the parties.

ID.—JUDGMENT—FINDINGS—EVIDENCE.—A judgment granting a divorce, based on findings of extreme cruelty and desertion, will not be reversed for the insufficiency of the evidence to sustain the finding as to desertion if the finding as to extreme cruelty is sustained.

ID.—IMMATERIAL EXCLUSION OF EVIDENCE.—In an action for divorce on the ground of extreme cruelty, the sustaining of an objection to a general question asked of a witness for the defendant, if he knew of his own knowledge what treatment was accorded the defendant by the plaintiff, is immaterial and does not warrant a reversal of a judgment for the plaintiff if the defendant did not set up in her answer any extreme cruelty on the part of the plaintiff towards her, or other marital misconduct, which, under section 122 of the Civil Code, she might have done by way of recrimination, and to defeat the claim of plaintiff for a divorce.

APPEAL from a judgment of the Superior Court of Marin County and from an order refusing a new trial. F. M. Angellotti, Judge.

The facts are stated in the opinion of the court.

John W. Bourdette, and Andrew Thorne, for Appellant.

Albert H. Elliot, for Respondent.

LORIGAN, J.—This is an action for divorce brought by plaintiff against defendant on the grounds of extreme cruelty and desertion. Defendant answered, denying specifically the charges made, and by cross-complaint alleged desertion on the part of plaintiff, and sought a decree against him for permanent maintenance and support under section 137 of the Civil Code. A decree of divorce was granted plaintiff upon both grounds of his complaint; the cross-complaint of

defendant for relief was denied; and from an order denying her motion for a new trial and from the judgment against her defendant appeals.

Upon the matter of extreme cruelty, the court found that the principal specific charges made in the complaint were true; that during a period of several years preceding the commencement of the action the conduct of defendant towards plaintiff had been continuously and habitually cruel; that on various occasions at their home in Mill Valley, Marin County, and elsewhere, she had applied to plaintiff abusive, harsh, and insulting words and epithets, and with equal frequency had in his presence and in the presence of mutual friends and acquaintances ridiculed him and said humiliating and derogatory things concerning him; that she repeatedly declared to him, and so stated to their friends and acquaintances, that he was too old and settled, that she had no affection for him, and that she wanted to separate from him and marry another man; that she willfully and without cause and falsely accused him of adultery and of having kept a mistress; that during the two years immediately preceding the commencement of the action, the defendant, without the consent of plaintiff and against his will, absented herself from their home, going to her mother's residence in San Francisco, taking with her their only child, an infant daughter; that defendant would absent herself from him for a period ranging from three days to three weeks during such period of two years, and that during said period of two years she was absent three fourths of the time; on some occasions she would state that she was going, and would go in spite of his protests; on the greater number of those occasions, however, she would leave without warning or notice to plaintiff, and he would not learn that she intended such departure till on returning from his daily vocation he would find her and the child gone, with no message left by her as to where she had gone, how long she intended to stay, or when she was coming back, nor would she during her absence send any word to him; during such portions of said period of two years that she was at home she refused to perform her ordinary household duties or prepare meals for plaintiff, and compelled him to either cook his own meals or take them at restaurants; that on February 21, 1902, (this action was commenced March

CXLVIII Cal.—16

17th of that year), defendant announced her intention of going to the home of her mother in San Francisco and taking their child with her, consent to which plaintiff refused on account of a violent storm which was then raging; thereafter on said day, in the absence of plaintiff, defendant broke most of the dishes in the house, threw it into disorder, took most of the silverware, the sewing-machine head, and her own clothing, left with the child for San Francisco, and did not return; before going she secreted plaintiff's clothes in the cellar under the house, and on request refused to tell him where they were; that defendant did not find them till ten days afterwards, and was compelled to wear his working-clothes on all occasions in the mean time. After finding these facts on the matter of cruelty, the court further found: "That all and each of said conduct and acts of defendant to and towards the plaintiff have inflicted upon plaintiff grievous mental suffering and have and has made his life intolerable and miserable."

It is insisted by defendant that the findings with reference to the particular facts set forth are not sustained by the evidence. The point made is not that there was not evidence before the court as to all these matters found, because plaintiff's testimony as to them is full and complete, but it is claimed that his testimony was not corroborated as required by section 130 of the Civil Code in order to warrant a decree. It is true that in some particulars his testimony was not expressly corroborated, or was but slightly so, but in the main particulars it was. It was corroborated as to her declarations concerning him to their friends and acquaintances,—her loss of affection for him and her desire to separate from him and marry some one else,—also as to her failure to discharge her household duties, and her repeated and long absences from their home in the manner and under the circumstances stated in the findings, including her conduct upon her final departure. Not only is his testimony corroborated in these particulars, but we think that, independent of this, when the whole testimony in this case is taken into consideration it in a degree reasonably tends to corroborate all the charges made and testified to by plaintiff as to defendant's conduct toward him, and which the court found to be true. It was not necessary, however, that the testimony of plaintiff should be corroborated in every particular. The statute does not require

it. It is only necessary that it be corroborated in the main particulars. As it is said in *Andrews* v. *Andrews,* 120 Cal. 186, [52 Pac. 298], ". . . Where the cruelty consists of successive acts of ill treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff; it is sufficient corroboration if a considerable number of important and material facts are so testified to by other witnesses, or there is other evidence, circumstantial or direct, which strongly tends to strengthen and confirm the statements of the plaintiff. The main purpose of section 130 is to prevent collusion." It is also recognized that: "In the very nature of the case it would be impossible to lay down any general rule as to the degree of corroboration which will be requisite. Hence the statute only requires that there shall be some corroborating evidence." (*Evans* v. *Evans,* 41 Cal. 104; *Cooper* v. *Cooper,* 88 Cal. 45, [25 Pac. 1062].) While the evidence in this case was conflicting,—conflicting to the extent that the defendant denied the truth of the statements of plaintiff and the other witnesses upon which the findings were based,—yet the credibility of all the witnesses, and the weight of their evidence, was a matter for the trial court. The court found the charges made by plaintiff to be true, and as in the main particulars his testimony was corroborated, the finding of extreme cruelty, within the rule of the decisions referred to, cannot be disturbed.

In passing from this branch of the appeal it may be said that a consideration of the entire evidence in the case fully warranted the superior court in finding, as it did (we have not set forth all the findings, but only such as were material to a consideration of the principal point urged by appellant against them), that the plaintiff had treated defendant with uniform kindness and consideration, and in concluding that the last four years of their married life had been extremely unhappy, occasioned alone by the conduct of defendant, and that their difference in temperament was productive of this unhappy condition; that for these four years at least the defendant had been thoroughly dissatisfied with her domestic environment, dissatisfied with Mill Valley, her home there, and her husband, and that her declarations concerning her feelings towards him and her repeated and prolonged absences from him and her home were the natural result of that

dissatisfaction. While incompatibility of temperament furnishes no ground for divorce in this state, in the present case it could properly be taken into consideration as explaining the course of conduct of defendant. And, taken into consideration by the lower court for that purpose, it afforded a reasonable explanation not only of defendant's general course of conduct toward the plaintiff as testified to by himself and other witnesses, but as a circumstance in the case which tended strongly to corroborate and confirm all the charges made by plaintiff as constituting her general course of conduct towards him, even as to those testified to by plaintiff alone, and which, as found, we are satisfied constitute extreme cruelty.

But it is further contended by appellant that, taking the facts found by the court to be true and sufficiently corroborated, they do not constitute in law extreme cruelty. The code section (94) defining extreme cruelty declares that it may consist of "the infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage." Under this provision it is not necessary that there shall be the infliction of bodily injury to constitute extreme cruelty. A course of conduct which entails grievous mental suffering alone is sufficient. (*Barnes* v. *Barnes,* 95 Cal. 171, [30 Pac. 298]; *Andrews* v. *Andrews,* 120 Cal. 187, [52 Pac. 298].) Whether in any case the course of conduct complained of constitutes "grievous mental suffering" is a question of fact. This the court must determine from the facts of each particular case considered in connection with the character, temperament, and disposition of the parties to the action. Extreme cruelty is a term of relative meaning, and a course of conduct which would inflict grievous mental suffering upon one person might not have that effect upon another. Hence no fixed legal rule for determining its existence in any given case can be laid down. The judge who tries the action, and has the parties before him for observation in the light of the evidence, is the one to whom the law commits the determination of this question in the first instance, and, as said in *Andrews* v. *Andrews,* 120 Cal. 187 [52 Pac. 298], this court will not disturb a finding that particular acts constitute grievous mental suffering, unless "the evidence in support of the finding is so slight as to indicate a want of ordinary good judgment and an abuse of discretion by the trial court." The

evidence in this case is not of that character and presents no such situation as would warrant the application of the rule just announced. These are the only objections by appellant upon the finding of extreme cruelty which need attention.

In addition, however, to finding that the defendant had been guilty of extreme cruelty, the court also found that the defendant had deserted the plaintiff. The defendant attacks this latter finding as unsupported by the evidence. It is unnecessary to consider this attack. As the finding of extreme cruelty supports the judgment, it is immaterial whether the finding of desertion is sustained by the evidence or not.

Attacks are made upon other particular findings; for instance, that the defendant was guilty of great conjugal unkindness after a reconciliation effected between the parties in 1899, and that the house and lot in Mill Valley occupied as their home was the separate property of plaintiff. It is insisted that these findings are not sufficiently supported by the evidence, but an examination of the record satisfies us that they are.

The only error of law specified is that the court erred in sustaining an objection to a question put to the father of defendant, a witness in her behalf. He was asked if he knew of his own knowledge what treatment was accorded the defendant by plaintiff, and an objection to the inquiry was sustained. We do not think any error which would warrant a reversal was committed by the court in making this ruling. The plaintiff charged the defendant with extreme cruelty, consisting of specific acts. These defendant denied, but she did not set up in her answer any extreme cruelty on the part of the plaintiff towards her, or other marital misconduct, which, under section 122 of the Civil Code, she might have done by way of recrimination and to defeat the claim of plaintiff for a divorce. If she desired to avail herself of any such claim, it was her duty to plead it. (*Smith* v. *Smith,* 119 Cal. 188, [48 Pac. 730, 51 Pac. 183].) She did not even assert it in her cross-complaint. The inquiry which was addressed to the witness was not directed to any particular time or occasion. Its apparent purpose was not to show the conduct of both parties towards each other on any occasion testified to by plaintiff, nor to explain or justify her alleged treatment of him, by showing that his conduct or actions toward her at such time

either invited such treatment or excused it. Any inquiries directed to that end would have been proper, and the court would doubtless have allowed them. The inquiry which was not permitted to be answered involved the entire life of the parties; it called for an answer which was apparently preliminary to an inquiry into the general course of treatment accorded her by plaintiff which she had not set up as recriminatory matter, or as constituting cruelty entitling her to a divorce, was not limited in terms towards explaining, excusing, or justifying any conduct on her part complained of by plaintiff, or testified to in the case; and hence was, in its general form, an immaterial inquiry.

We find no error in the record, and the judgment and order appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.