Points Decided.

(June 21, 1913.)

# ELIESE DE CLOEDT, Respondent, v. FRANK DE CLOEDT, Appellant.

[133 Pac. 664.]

DIVORCE—EXTREME CRUELTY — GROUNDS — DRUNKENNESS — RELIGIOUS PERSECUTION — NEGLECT — BLOWS — VILE LANGUAGE — FRAUDULENTLY DEPRIVING PLAINTIFF OF PROPERTY RIGHTS.

1. Sec. 2657, Rev. Codes, provides as grounds for divorce the following: Subd. 2. "Extreme cruelty." Subd. 5. "Habitual drunkenness."

2. Sec. 2649, Rev. Codes, defines extreme cruelty: "Extreme cruelty is the infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage."

3. Sec. 2652, Rev. Codes, defines habitual intemperance: "Habitual intemperance is that degree of intemperance from the use of intoxicating drinks which disqualifies the person a greater portion of the time from properly attending to business, or which would reasonably inflict a course of great mental anguish upon the innocent party."

4. The legislature by the provisions of sec. 2652, in defining habitual drunkenness, does not mean that a person would have to be drunk all the time, neither does it provide that he shall be incapacitated from pursuing his usual labors during any particular hours or at any time. It does not provide that the person shall be generally drunk or that he is drunk more hours than he is sober, but it does mean one who has a fixed habit of frequently getting drunk, and that such drunkenness causes the innocent party to suffer mental anguish and suffering. It is sufficient that he have the habit and that the habit is firmly fixed upon him; that he gets drunk with recurring frequency or that he is unable to resist when opportunity and temptation is presented.

5. In a suit for divorce, where the complaint alleges extreme cruelty, and acts of cruelty are alleged, as controversies and quarrels over religious matters, and evidence is introduced which shows that the defendant persisted during the period of marriage in reviling the Protestant faith and applying vile names to the Protestant reformer, Luther, and in furnishing literature, and insisting at different times, when the plaintiff was tired and after hard work, that she "pray the beads" with him, and as a result that plaintiff was sickened and affected nervously, and that such remarks be-

came a horror, and would drive her to frenzy, such evidence is admissible, and may be considered as corroborative of the allegations of the complaint as to acts of cruelty.

6. In a divorce proceeding, where the plaintiff testifies that she was not properly cared for during her marriage relation with the defendant at times when she was sick, and that vile language was used by the defendant addressed to her, calling her vile names, such evidence is proper as showing acts of the defendant proving cruelty and improper treatment.

7. In an action charging extreme cruelty, where it is alleged and shown that blows were inflicted upon the plaintiff and the defendant hit the plaintiff with his fist, such evidence is admissible, and tends to prove acts of extreme cruelty when considered with other evidence in the case.

8. The degree of corroboration required by sec. 2661 of the Rev. Codes has never been defined, and it has been said that "in the very nature of the case, it would be impossible to lay down any general rule as to the degree of corroboration which will be requisite; hence the statute only requires that there shall be some corroborating evidence," and the statute can only be construed that the testimony of the plaintiff as to extreme cruelty must be sufficiently corroborated. (Approved in *Bell v. Bell,* 15 Ida. 7, 96 Pac. 196.)

9. In a divorce suit, where property rights are involved, and a post-nuptial settlement is presented and relied upon as a settlement of all property rights, and such agreement is challenged on the ground that it is unfair and inequitable and fraudulent, the evidence must show clearly and with certainty that the post-nuptial settlement, to be binding under the most favorable circumstances, must in every way be fair and unexceptionable on equitable grounds.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Carl A. Davis, Judge.

An action for divorce. Judgment for plaintiff. *Affirmed.*

Cavanah, Blake & MacLane and W. A. Stone, for Appellant.

A party may not allege as a constituent ground of one cause of action for divorce facts which belong in a different category but are of themselves insufficient to justify divorce on the latter ground. (*Haskell v. Haskell,* 54 Cal. 262.)

To constitute ground for divorce, habitual intemperance must either have disqualified the defendant from attending to business or must have inflicted great mental anguish upon the plaintiff. (Rev. Codes, sec. 2652.)

A collection of cases as to what constitutes habitual intemperance or habitual drunkenness within the meaning of the divorce law may be found as follows: *Dennis v. Dennis,* 68 Conn. 186, 57 Am. St. 95, 36 Atl. 34, 34 L. R. A. 449; 17 Cent. Dig., col. 383; 7 Dec. Dig., p. 1193; 4 Words and Phrases, p. 3205.

That failure to provide care or medical attendance is not of itself ground for divorce, see *Bonney v. Bonney,* 175 Mass. 7, 78 Am. St. 473, 55 N. E. 461; *Jenness v. Jenness,* 60 N. H. 211.

Mutual wrangling over money matters does not make out a case of extreme cruelty between husband and wife. (*Beller v. Beller,* 50 Mich. 49, 14 N. W. 696.)

Family quarrels are not ground for divorce. (*Rose v. Rose,* 50 Mich. 92, 14 N. W. 711.)

Abusive language causing nervous sickness, which is not serious and does not interfere with the wife's duties, is not such cruel or grievous mental suffering as will furnish ground for divorce. (*Mahnken v. Mahnken,* 9 N. D. 188, 82 N. W. 870.)

In considering cases of cruelty, the situation in life, refinement or lack thereof, and habits of the parties, must be considered. (*David v. David,* 27 Ala. 222; *Lauber v. Mast,* 15 La. Ann. 593; *Kline v. Kline,* 50 Mich. 438, 15 N. W. 541; *Shuster v. Shuster,* 3 Neb. (Unof.) 610, 92 N. W. 203.)

A separation agreement, reasonable and just in its provisions, contemplating the division and disposition of the property of the parties and the relinquishment by one of all claim or interest in the estate of the other, is valid and not contrary to public policy where the relations between husband and wife are such as to make separation inevitable. (*King v. Mollohan,* 61 Kan. 683, 60 Pac. 731, affirmed 61 Pac. 685; *Wickersham v. Comerford,* 96 Cal. 433, 31 Pac. 358; *Daniels v. Benedict,* 97 Fed. 367, 38 C. C. A. 592; *Luttrell v. Boggs,*

168 Ill. 361, 48 N. E. 171; *Henderson v. Henderson,* 37 Or. 141, 82 Am. St. 741, 60 Pac. 597, 61 Pac. 136, 48 L. R. A. 766.)

The fact that in a separate agreement the wife gets less than she would be entitled to on a legal distribution of the estate is no ground for setting it aside in the absence of fraud, duress or undue influence. (*Daniels v. Benedict,* 97 Fed. 367, 38 C. C. A. 592; *Sumner v. Sumner,* 121 Ga. 1, 48 S. E. 727.)

Such an agreement, when made, is a contract between the parties, into the reasonableness of which the courts will not inquire so long as the execution of the contract is not attacked. (*Corker v. Corker,* 87 Cal. 643, 25 Pac. 922.)

O. M. Van Duyn and Wyman & Wyman, for Respondent.

"The defendant's excessive use of intoxicants is made to appear from the evidence, and while this, of itself, may not be sufficient to sustain the charge of habitual drunkenness, it was a contributory cause to the other charge, to wit, that of extreme cruelty." (*Tietken v. Tietken,* 60 Neb. 138, 82 N. W. 367; *Powers v. Powers,* 20 Neb. 529, 31 N. W. 1; *Grierson v. Grierson,* 156 Cal. 437, 134 Am. St. 137, 105 Pac. 120.)

The obvious purpose of sec. 2661, Rev. Codes, is to prevent collusion between the parties. Where the reason for the rule fails, as it does here, the rule itself might very well be held to fail. Corroboration is, however, required by the great weight of authority. As to what is corroboration and the extent to which it is required: 14 Cyc. 689; *Andrews v. Andrews,* 120 Cal. 186, 52 Pac. 298; *Smith v. Smith,* 119 Cal. 183, 48 Pac. 730, 51 Pac. 183; *Evans v. Evans,* 41 Cal. 103; *Baker v. Baker,* 13 Cal. 88; *Avery v. Avery,* 148 Cal. 239, 82 Pac. 967; *McMullin v. McMullin,* 140 Cal. 112, 73 Pac. 808; *Cooper v. Cooper,* 88 Cal. 45, 25 Pac. 1062; *Venzke v. Venzke,* 94 Cal. 226, 29 Pac. 499; *Avery v. Avery,* 148 Cal. 243, 82 Pac. 967; *Bell v. Bell,* 15 Ida. 8, 96 Pac. 196; *Clopton v. Clopton,* 11 N. D. 212, 91 N. W. 46; *Tuttle v. Tuttle,* 21 N. D. 503, Ann. Cas. 1913B, 1, 131 N. W. 460.

Inasmuch as the ground that the decree was granted on was that of extreme cruelty, we call to the court's attention

the definition of that phrase in California, to which we are indebted for our statute upon the subject. (*Hatton v. Hatton,* 136 Cal. 353, 68 Pac. 1016; *Andrews v. Andrews, supra; Barnes v. Barnes,* 95 Cal. 176, 30 Pac. 298, 16 L. R. A. 660; 9 Am. & Eng. Ency. of Law, 791; 1 Bishop on Marriage, Divorce and Separation, sec. 1580; *Wright v. Wright,* 6 Tex. 3; *Gibbs v. Gibbs,* 18 Kan. 419; *Mercer v. Mercer,* 114 Ind. 558, 17 N. E. 182; *Doolittle v. Doolittle,* 78 Iowa, 691, 43 N. W. 616, 6 L. R. A. 187; *Bonney v. Bonney,* 175 Mass. 7, 78 Am. St. 473, 55 N. E. 461.)

Where, as here, the husband seeks, through a post-nuptial agreement, to control the disposition of the property upon a decree of divorce, the courts refuse to be so bound unless the agreement was entered into freely and voluntarily, with full knowledge of the facts and the law, after disinterested advice, where there was practically no coercion, deception, or fraud, and where the agreement fully protects the property rights of the wife. Failing in any of these respects, it fails to be of binding force. (14 Cyc. 770; 19 Am. & Eng. Ency. of Law, 1248; Spencer on Domestic Relations, sec. 285; *Campbell et al. Appeals,* 80 Pa. 298; *Holt v. Agnew,* 67 Ala. 360; *Switzer v. Switzer,* 26 Gratt. (Va.) 574; *Farmer v. Farmer,* 39 N. J. Eq. 211; *Reagan's Admr. v. Holliman,* 34 Tex. 404.)

Generally, that agreements between husband and wife, in order to be upheld, must be freely entered into and be fair in their terms: *Witbeck v. Witbeck,* 25 Mich. 439; *Meriam v. Harsen,* 4 Edw. Ch. (N. Y.) 70; *McRae v. Battle,* 69 N. C. 98; *Dolliver v. Dolliver,* 94 Cal. 642, 30 Pac. 4.

Where there is a conflict in the evidence, the decision of the trial court will not be reversed if there are any reasonable grounds to sustain the same. (*Avery v. Avery, supra; McDonald v. McDonald,* 155 Cal. 665, 102 Pac. 927, 25 L. R. A., N. S., 45; *Gibbs v. Gibbs,* 18 Kan. 419; *Later v. Haywood,* 15 Ida. 718, 99 Pac. 828; *Bowers v. Cottrell,* 15 Ida. 221, 96 Pac. 936; *Swanson v. Kettler,* 17 Ida. 321, 105 Pac. 1059; *Snowy Peak etc. Co. v. Tamarack etc. Co.,* 17 Ida. 643, 107 Pac. 60.)

STEWART, J.—This action was brought in the district court by the respondent against the plaintiff for a divorce, and in the complaint judgment was prayed for in the sum of $5,895, with interest, by reason of the fact that such sum was due her on account of defendant's securing her signature to a certain agreement upon the plaintiff's selling certain real property which had been secured by the plaintiff by a homestead entry. The complaint charges extreme cruelty consisting, first, of religious persecution; second, drunkenness; third, neglect; fourth, blows; fifth, vile language; sixth, fraudulently depriving plaintiff of her property.

The answer specifically denies the material allegations of cruel treatment and denies the allegations with reference to securing the plaintiff to sign a certain agreement upon the plaintiff's selling certain real property.

The cause was tried by the court. Findings of fact and law were made and judgment was rendered for the plaintiff granting a divorce, and that plaintiff have judgment for about $11,000 and interest.

The court upon the issues of fact finds as follows: Finding 4. "That defendant continuously during the entire course of the married life of plaintiff and defendant, without just cause, treated plaintiff in such manner as to cause and to inflict upon her grievous mental and physical suffering, and in the manner and form and at the times as alleged in the complaint, and to such effect as to directly disturb her peace and endanger her health, and to render her life miserable and unhappy, and to such a degree as to constitute extreme cruelty."

Finding 5. "That a marriage settlement agreement . . . . was obtained from plaintiff by duress, undue influence and with lack of opportunity for a voluntary consideration; and that plaintiff was not at the time of signing said instrument in a proper and normal mental and physical condition to voluntarily express her wishes and desires. That she did not at the time of signing said instrument voluntarily express her will and desire, and did not understand or accede to the con-

tents of the same; that the said marriage settlement was and
is unfair, unjust and inequitable toward the plaintiff.''

The court then finds upon the plaintiff's property rights,
and finds, as a matter of law: ''3. That the plaintiff is en-
titled to a decree . . . . dissolving the bonds of matrimony
between plaintiff and defendant. . . . . '' And it is ordered
that the plaintiff should be awarded $6,000 in cash, received
by plaintiff, including any property into which plaintiff has
converted the same, and $5,000 of the purchase price notes
and mortgages given by Herman Weick upon the property
described as lots 1 and 2 of the east half of the northwest
quarter of section 31, township 4 north of range 2 west, B. M.,
in Canyon county, being the property owned by plaintiff at
the time she married the defendant.

This appeal is from the judgment.

The first error assigned is that the evidence upon the allega-
tion in the complaint as to drunkenness is not sufficient to
justify a decree of divorce because of drunkenness, and that
the drunkenness shown by the evidence is not sufficient to
justify a decree of divorce. As an illustration of this evi-
dence we call attention to the evidence of plaintiff: ''Q. Do
you mean he was drunk when he came from town? A. Drunk,
yes, sir, and sometimes very bad. Q. Was he drunk very
often or just about once a year? A. No, sir; most every time
he go to town he come home drunk. Q. Did he go to town
many times? A. Every week. Q. Well, did he get pretty
badly drunk, or just a little bit drunk? A. Sometimes not so
bad, and sometimes awful full that he lied senseless and
didn't know anything from himself. Q. How long a time
did this drunkenness of the defendant continue, for what
number of years? A. Why, it was all the time. Q. From
the time you married him until the time you left in Decem-
ber, 1908? A. Yes, he really went in town and was so drunk
he didn't find his home, and he had to go across the Indian
ditch and he come into Mrs. Powell and she kept him over
night. Q. She kept him over night because he was drunk?
A. Yes, and didn't find his home. Q. Did you ever have to
drag him into the house at any time because he was drunk?

A. Why, he come once so drunk and he fell down from the buggy, and I had never unhitch the horses but I tried to do it. At last I got it done and I take her in the stable and I watered her and feed her. . . . . Q. You say that lasted from the time you married him until you quit living together in December, 1908. Now, how many times did it happen during that interval? A. Well, I told you he was drunk most all the time less oder more when he go in town.''

The evidence of plaintiff was corroborated by other witnesses to the extent of showing the drunkenness of the defendant at frequent times, and at times when drunk he became abusive and quarrelsome. This drunkenness continued for thirteen years.

The complaint, however, does not allege habitual drunkenness as a sole cause for the divorce, and it is not claimed upon the evidence that divorce should be granted upon that ground, but it is claimed that the drunkenness of the defendant resulted in cruel treatment and that such treatment inflicted upon the plaintiff great pain and suffering.

Sec. 2647, Rev. Codes, provided the grounds upon which a divorce may be granted, and among such grounds is to be found subd. 2, which provides: ''Extreme cruelty.'' Subd. 5 provides: ''Habitual intemperance.''

Sec. 2649 of the Rev. Codes defines extreme cruelty as used in sec. 2647 as follows: ''Extreme cruelty is the infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage.''

Sec. 2652, Rev. Codes, defines habitual intemperance as used in sec. 2647 as follows: ''Habitual intemperance is that degree of intemperance from the use of intoxicating drinks which disqualifies the person the greater portion of the time from properly attending to business, or which would reasonably inflict a course of great mental anguish upon the innocent party.''

The argument is presented that the evidence was not sufficient to show intemperance sufficient to inflict a course of great mental anguish upon the innocent party and was not such as to show acts of cruelty of any kind whatever, and

therefore should not be taken into consideration in determining the sufficiency of the evidence to show cruel treatment as alleged in the complaint.

Under the statute it is clear that habitual intemperance means that degree of intemperance which occasions and inflicts great mental anguish upon the innocent party.

The statute defining habitual drunkenness does not mean that a person would have to be drunk all the time, neither does it provide that he shall be incapacitated from pursuing his usual labors during any particular hours, or any time, but it does mean one who has a fixed habit of frequently getting drunk, and that such drunkenness causes the innocent party to suffer great mental anguish and suffering. The statute does not provide that the person shall be generally drunk, or that he is drunk more hours than he is sober. It is sufficient that he have the habit and that the habit is firmly fixed upon him; that he gets drunk with recurring frequency periodically, or that he is unable to resist when opportunity and temptation is presented. This general rule is clearly considered by the supreme court of Washington in the case of *Page v. Page,* 43 Wash. 293, 117 Am. St. 1054, 86 Pac. 582. This case will also be found in 6 L. R. A., N. S., 914, where other cases are fully annotated. We call attention also to the following citations: Tiffany's Persons and Domestic Relations, p. 208; Peck, Domestic Relations, p. 174; Nelson on Divorce and Separation, vol. 1, sec. 353; *Mahone v. Mahone,* 19 Cal. 626, 81 Am. Dec. 91; *Forney v. Forney,* 80 Cal. 528, 22 Pac. 294.

The evidence of the plaintiff is corroborated by other evidence. The drunkenness of the defendant was for about thirteen years, at least once a week. Sometimes he was more drunk than at other times; sometimes when he was drunk he was incapacitated from doing his usual work, and many times when drunk he used profanity and foul names and struck blows, and every time almost when he was drunk he was led to indulge in discussions of religious questions in which he seemed to make an effort to influence the plaintiff to join his religious denomination, and the efforts and influence

which he attempted to assume over the plaintiff were suffi-
cient to show that his drunkenness was of the character that
no woman, who had any respect for her womanhood or re-
spect for her marriage vows, could endure without great
suffering and pain. The conduct of the defendant was such
that he exacted and received from the plaintiff a degree of
patience and endurance seldom yielded by the best element
of womanhood.

The next contention made in this case is that there is no
evidence corroborating the allegation in the complaint as to
the controversies and quarrels over religious matters, and
such evidence is denied by the defendant; that the evidence
does show that upon the religious question the plaintiff was
as much to blame as the defendant, and showed that the plain-
tiff was the aggressor.

The evidence, however, shows that the defendant was very
persistent during the period of the marriage in reviling the
Protestant faith and applying vile names to the Protestant
reformer, Luther, in furnishing Catholic literature to the
plaintiff, and in insisting at different times, when plaintiff
was tired and after hard work, that she "pray the beads"
with him, and such conduct sickened and affected her nerves
and became a horror, and would drive her to frenzy. This
constant effort on the part of the defendant to convert the
plaintiff to the defendant's religion was pursued frequently,
and the plaintiff's testimony was corroborated by a number
of witnesses, and no doubt contributed to the plaintiff's worry
and caused her suffering and pain.

The right to practice and hold such faith and belief as
accords with the judgment of each person must be conceded
as between husband and wife, the same after marriage as
before, and should exist between all persons; and where one
of the spouses abuses such right by exacting from the other
spouse compliance with the religion of the other, where it is
against the belief of the one from whom the demand is made,
and such demand causes worry and pain and suffering on
the part of the spouse from whom the same is demanded, such
action will be taken to be a violation of the obligation and

vows of their marriage contract, and likewise a violation of the sacred teachings of the particular faith and religion of the church of which the person may be a member, and such treatment in a divorce proceeding may be considered in determining the treatment of the one spouse by the other.

Another ground of cruelty alleged and upon which evidence was introduced was neglect in not properly looking after the plaintiff when she was ill in bed with pneumonia, and in not providing plaintiff with a proper nurse and medical attendance. There is some evidence that the plaintiff was not properly cared for when she was sick, and that defendant did not show the respect and attention that he should have as the husband of the plaintiff, and showed by his acts that he did not have any love or affection for the plaintiff.

The next charge of cruelty is the alleged blows that defendant gave the plaintiff. The plaintiff says that "he hit me once with his fist vee he come from town and was awful drunk, and he got rolling around and I get him, at last I git him out of the house, but he knock the door in." In answer to the inquiry, "Where did he hit you that day he hit you with his fist?" plaintiff testified: "Yes, sir, he just hit me about my breast and then I—I went to go out and I want to see I get help, but he run after me, and there some men on the road coming from Caldwell and they laughed and went on, and then he run over and went in the kitchen and I went away and vee I was coming back, he lying on the kitchen floor and was asleep."

This evidence is denied by the defendant. It is corroborated, however, by other facts, by his acts when under the influence of liquor. This evidence was admissible, and tended to show acts which were acts of cruelty to be considered in determining the question of extreme cruelty.

Vile language is also charged as having been addressed to the plaintiff, and the plaintiff testified that he called her a "low-down Protestant son-of-a-gun." This, however, was denied by the defendant, but is corroborated as above stated.

It is also contended that the evidence as to neglect of plaintiff during her illness and at other times is not corrobo-

rated. The plaintiff testified to such facts and the defendant denied the same. We find, however, in the record that Isabella T. Squier testified: "I went down there and found her in an icy cold bedroom without any fire and apparently no attention had been paid whatever, and she had no one to care for her and seemed to be in a very sad condition. It was cold and snow was on the ground." This would seem to be a corroboration of the plaintiff's testimony, and the trial court had a right to determine the credibility of the plaintiff's testimony and likewise the defendant's in determining the weight of the evidence.

The appellant relies upon sec. 2661, Rev. Codes, which provides: "No divorce can be granted . . . . upon the uncorroborated statement, admission or testimony of the parties or upon any statement or finding of fact made by a referee; but the court must, in addition to any statement or finding of the referee, require proof of the facts alleged, and such proof, if not taken before the court, must be upon written questions and answers."

In this connection it is well to observe that the complaint alleges, as the ground upon which the divorce is prayed for, extreme cruelty. In determining the cruelty all the facts shown by the evidence which tend to show the treatment and care given the plaintiff by the defendant were properly considered by the trial court.

This court, in the case of *Bell v. Bell,* 15 Ida. 8, 96 Pac. 196, had under consideration the degree of corroboration required in divorce proceedings, and in that opinion the court construes sec. 2661, *supra,* and quotes and approves the following from the case of *Venzke v. Venzke,* 94 Cal. 225, 29 Pac. 499: " 'The degree of corroboration required by sec. 130 of the Civil Code has never been defined; and it has been said that "in the very nature of the case it would be impossible to lay down any general rule as to the degree of corroboration which will be requisite. Hence the statute only requires that there shall be some corroborating evidence," ' " meaning, as we suppose, that there must be some evidence corroborating the plaintiff aside from the testimony or con-

fession or admissions of the defendant made in her letters to the plaintiff, or in her testimony during the trial."

This same question has been discussed in a number of cases in the state of California, where the court approves the rule announced in *Venzke v. Venzke, supra: Baker v. Baker,* 13 Cal. 88; *Evans v. Evans,* 41 Cal. 103; *Smith v. Smith,* 119 Cal. 183, 48 Pac. 730, 51 Pac. 183; *Andrews v. Andrews,* 120 Cal. 184, 52 Pac. 298; *Avery v. Avery,* 148 Cal. 239, 82 Pac. 967.

In the case of *Clopton v. Clopton,* 11 N. D. 212, 91 N. W. 46, the supreme court of North Dakota discusses the California cases and announces the same rule.

In the present case we are satisfied that the testimony of the plaintiff as to the different acts of extreme cruelty charged in the complaint, and the acts upon the part of the defendant showing cruelty, such as habitual drunkenness, religious persecution, negligence, lack of medical attention, vile language and blows, when considered with all the evidence in the case, is sufficiently corroborated to show good grounds for a divorce upon the ground of extreme cruelty.

The next contention urged for reversal is that the trial court erred in setting aside and annulling the agreement made between plaintiff and defendant for separation and division of the property rights of the plaintiff and the defendant.

The courts generally agree that the rule as to contracts made prior to separation with a view of separation is that such contracts are void; while another view is held in a great many cases, especially those that have been made in recent years, that such agreements, where the separation has already taken place, or the circumstances are such that separation is inevitable, are valid; while some courts hold that such contracts are presumptively void, and place the burden of proving their validity upon the parties claiming under them.

In vol. 19 Am. & Eng. Ency. of Law, p. 1248, the author announces the rule as follows: "Since husband and wife occupy to each other a relation of confidence, readily subject to abuse on the part of the husband, conveyances from the

wife to the husband or settlements unfavorable to the wife are presumptively void as being produced by fraud or undue influence. The burden is upon the husband or those claiming under the conveyance to show that the transaction was fair and free from fraud." This same rule is announced in Spencer on Domestic Relations, sec. 285; also *Sumner v. Sumner,* 121 Ga. 1, 48 S. E. 727, and other cases.

In *Campbell et al. Appeal,* 80 Pa. 298, the court held: "A post-nuptial contract, to be binding under the most favorable circumstances, must in every way be fair and unexceptionable on equitable grounds."

In *Dolliver v. Dolliver,* 94 Cal. 642, 30 Pac. 4, the supreme court of California announces the rule which we think should especially be applied in this case: "The relation of husband and wife creates a personal trust and confidence between them, which imposes on each of the spouses the obligation of exercising the highest good faith toward the other in any dealings between them, and precludes either one of them from obtaining any advantage over the other by means of any misrepresentation, concealment, or adverse pressure; and this relation and the obligation arising from it, are not destroyed by the mere fact that an action for a divorce is pending between them, nor does the law permit any inquiry into the extent of the trust and confidence presumed to be placed by one in the other so long as the relation exists."

There can be no question whatever but that at the time the contract of settlement was entered into the plaintiff was misled; that she was not familiar with her property rights; she did not know the distinction between community property and separate property; she was an aged woman. Her home was sold and she signed the agreement not knowing the effect or result, and by signing the same she was to receive only $6,000 for her home when the same was of the value of about $11,000. For six years and four months she had lived and worked on the Ada county ranch of the defendant, had done the housework for the hired men, and for seven years she had worked and cooked in the Canyon county property which belonged to the plaintiff, and all she received during that

period of time was barely sufficient clothes to wear and food barely sufficient to sustain her existence. The defendant during this time had received all the proceeds from both the Canyon county and Ada county farms, and $10,000 from the sale of the Ada county farm, and the evidence shows that the defendant, according to his own statement, had expended $1,000 in proving the Canyon county ranch which belonged to the plaintiff. This sum, however, was shown by other witnesses to be less than $1,000. The agreement also provided that the plaintiff should have $6,000 for the sale of her own property, and the defendant exacted the balance. The purchase price was about $11,000, and the defendant required notes and mortgages of the purchaser payable to himself. The trial court in setting aside the agreement had these facts before him, and the court gave the defendant credit for the amount he claimed he had expended, and deducted the same from the sum of $5,895, which the plaintiff originally sued for and gave her judgment for the sum of $5,000 and interest.

Upon the facts above recited the court held that the settlement was unfair; that it was made under duress and circumstances which did not give the plaintiff a fair opportunity to judge her rights in the premises.

There can be no question in this case but that there is a conflict in the evidence upon some of the issues of fact. But, admitting that to be true, we do not believe in the present case, under the particular facts as shown by the record, such conflict is sufficient to show reasonable grounds for reversal. Taking the evidence as a whole and applying the same to the charge of extreme cruelty, the evidence is not in conflict, but conclusive, and upon this question the court finds for the plaintiff. The grounds assigned in the complaint and the evidence introduced to support the allegations, when considered together, show extreme cruelty. Extreme cruelty is a term of relative meaning, and a course of conduct that would inflict grievous mental suffering upon one person might not have that effect upon another. Hence no fixed legal rule for determining its existence in any given case can be laid down. The judge who tries the case and has the parties before him

for observation in the light of the evidence is the one to whom the law commits the determination of this question in the first instance, and this court will not disturb a finding that particular acts constitute grievous mental suffering, unless the evidence in support of the finding is so slight as to indicate a want of ordinary good judgment and an abuse of discretion by the trial court. Whether the evidence in this case shows a course of conduct which constitutes grievous mental suffering is a question of fact, and such question must be determined from the facts, and should be considered in connection with the character, temperament and disposition of the parties to the action.

This court in the case of *Later v. Haywood,* 15 Ida. 716, 99 Pac. 828, held: "It must be admitted, on the other hand, that the preponderance of evidence is with the appellant, but we cannot reverse the judgment simply because the preponderance of the evidence is against the judgment. The rule is firmly established in this court that it will not reverse a judgment where there is a substantial conflict in the evidence, and this rule applies as well in equity cases heard upon oral testimony as in law cases." This rule is also approved in *Swanson v. Kettler,* 17 Ida. 321, 105 Pac. 1059; *Snowy Peak etc. Co. v. Tamarack etc. Co.,* 17 Ida. 643, 107 Pac. 60.

We are satisfied from our examination of the evidence in this case upon the various grounds alleged in the complaint that the findings of the trial court are sustained by substantial evidence upon the charges of extreme cruelty, consisting of religious persecution, drunkenness, neglect, blows, vile language and fraud of the defendant in depriving plaintiff of her property. The judgment is *affirmed.* Costs awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.