[Civ. No. 3744.  First Appellate District, Division One.—January 20, 1921.]

ORA CLARK PALMER, Appellant, v. WILLIAM G. PALMER, Respondent.

[1] DIVORCE—EXTREME CRUELTY—EVIDENCE—ERRONEOUS DENIAL OF DECREE.—In this action for divorce upon the grounds of adultery and extreme cruelty, the evidence as to the defendant's action on several occasions in brutally maltreating the plaintiff physically, as testified to by her, some of which acts of cruelty were sufficiently corroborated, and his open association with a certain "holy roller" woman coadjutor, whom he insisted upon retaining in the home of the parties against the protest of plaintiff, and his conduct there with and demeanor toward that woman on the one hand and plaintiff on the other, as testified to by plaintiff, by a sister of defendant, by a minor daughter of the parties, and by other witnesses, was sufficient, in the absence of evidence on the part of the defendant in contradiction thereof to entitle plaintiff to a decree upon the ground of physical and mental cruelty; and the trial court committed error in directing that judgment be entered in favor of the defendant at the conclusion of the evidence for plaintiff.

APPEAL from a judgment of the Superior Court of Los Angeles County.  J. P. Wood, Judge.  Reversed.

The facts are stated in the opinion of the court.

Sidney J. Parsons for Appellant.

No appearance for Respondent.

KERRIGAN, J.—This is an appeal by the plaintiff in an action for divorce instituted by her against the defendant, her husband, alleging acts of cruelty and adultery upon his part.

At the conclusion of the evidence for plaintiff the court directed that judgment be entered in favor of the defendant, from which judgment the plaintiff prosecutes this appeal.

1.  Cruelty as ground for divorce, notes, 29 **Am. Dec.** 674; 73 **Am. Dec.** 619; 40 **Am. Rep.** 463; 51 **Am. Rep.** 736; 65 **Am. St. Rep.** 69.

[1] It seems quite clear from the course pursued by the trial judge during the introduction of plaintiff's evidence, and particularly from his remarks at the conclusion thereof, that he was of the opinion that the plaintiff was seeking a divorce on the single ground of the defendant's adultery, and that the evidence was insufficient to sustain a decree in her favor upon that ground; whereas in truth her action was also based upon the ground of physical and mental cruelty, which the evidence abundantly established, and, in the absence of evidence on the part of the defendant in contradiction thereof, left the cause in such guise that the action of the trial court in dismissing the suit was erroneous.

The plaintiff and defendant were married in February, 1894, and at the time of the trial there were living as the issue of this marriage four children—Ethel, aged sixteen; Chester, aged thirteen; Oran, aged twelve years, and Paul, aged five years. The plaintiff testified to various incidents occurring between herself and the defendant, some of which we will refer to: The defendant is a member of a so-called religious sect known as "holy rollers" and a preacher and expounder of its doctrine. On one occasion (we will hope when he was off duty) he tore off all the plaintiff's clothes. Upon another he dragged her out of bed, threw her across the room and then drew her out on to an adjoining sleeping porch, took off her gown and then beat her with his clenched fist, striking her upon the breast. As a result of this struggle she was sore all over for several days, and later the pain in her side and breast became so serious as to necessitate a surgical operation by removing the breast. At another time the defendant went to plaintiff's bedroom in company with a woman (named as the corespondent in this case), a Mrs. Walker, and awakened the plaintiff. Learning that the defendant desired to make some sort of confession to her, the plaintiff objected to the presence of Mrs. Walker, who thereupon withdrew, and the defendant then got down upon his knees at the bedside of his wife, and informed her that Mrs. Walker had refused to become a member of their church, which she contemplated doing upon the following day, unless he had confessed to the wrongs he had done his wife, whereupon he stated that he had trifled with and been intimate with

four women. Later that morning the defendant communicated to the plaintiff that Mrs. Walker was going to stay with them at their home. The plaintiff protested. Her objection was met by the defendant telling her that she had nothing to say about the matter; that "The Lord says Mrs. Walker is going to stay here, and she will stay." After this introduction to the plaintiff's home the defendant and said co-respondent the next morning left for their church, the defendant telling the plaintiff that Mrs. Walker would be home for dinner. Notwithstanding the plaintiff's protest Mrs. Walker returned with the defendant, and a place was arranged for her at the family table by one of the children. Subsequently during Mrs. Walker's stay of three weeks at the Palmer home, and on one Saturday night after the plaintiff had cleaned her house and "put it in order for Sunday," and while she was getting the baby ready for bed, the defendant surprised his wife by transporting her bed and bedding from the upper to the lower floor of the house, saying that she should sleep downstairs, against which she unavailingly protested. While upon this point (as upon others) the record is not clear, apparently from December 2 to 28, 1917, when the plaintiff left her home, she, her daughter, and the baby slept downstairs, while the two other children, their pastor father, and his newly found convert slept upstairs. On this subject of the curious intimacy existing between this "holy roller" preacher and his coadjutor, the plaintiff also testified that "they had a bed in the study, where they spent a good many hours alone with the door locked"; that she objected to the defendant complying with Mrs. Walker's request to rub and hold her hand to relieve her fingers of numbness, and to his serving this intruder with breakfast in bed. On the morning before the plaintiff left the defendant and their home she ordered Mrs. Walker to leave the house. On the following day, the 28th of December, it appears that a Mrs. Susie Barnell, a sister of the defendant, called to talk with him about his conduct toward the plaintiff. This lady was a witness at the trial, and testified that she at that time said to the defendant, "I am going to order Mrs. Walker out of the house. I am not going to have her tormenting Ora [plaintiff]." For this purpose she went upstairs, followed by the defendant,

who warned Mrs. Walker, saying, "Lock the door. Susie is coming." A quarrel ensued in the upper hall between the two women, Mrs. Walker pushing Mrs. Barnell through the hall and down on to the landing, the while tearing her underclothes to pieces. On her part, Mrs. Barnell struck Mrs. Walker with an empty revolver, at which the defendant became violent, so that the plaintiff directed two of the children, the girl and the baby, to leave the house, saying to the girl, "Papa may kill you." Mrs. Barnell having thrown the pistol downstairs, the defendant went after it, and, meeting his wife at the bottom of the stairs, struck her on the back of the head, knocking her to the floor and stunning her, and also pushed his sister Susie out of the house. It was this scene of violence which culminated in the plaintiff leaving defendant's home and not returning. Its details were given in testimony both by the plaintiff and Mrs. Barnell, and parts of it were corroborated by Oran Palmer, one of the children of the parties, and twelve years of age. Ethel Palmer, their daughter and eldest child, testified that upon an occasion about three years prior to the trial, the defendant struck the plaintiff with his hand and took her into another room, where she heard her mother crying. Other witnesses testified that the defendant was with Mrs. Walker on two occasions at least alone at the church with the doors locked.

From this reference to the evidence, it is too clear to require argument that in the absence of rebutting testimony the plaintiff was entitled to a decree of divorce from the defendant upon the ground of extreme cruelty. Her own evidence showed that the defendant had on several occasions brutally maltreated her physically, and some of these acts of cruelty were sufficiently corroborated, and the defendant's open association with Mrs. Walker, and insisting upon her retention in the home of the parties against the protest of the plaintiff, and his conduct there with and demeanor toward this woman on the one hand and the plaintiff on the other constitute a plain instance of conduct on the part of a married person calculated to inflict great mental suffering upon his spouse, which the law regards as ground for dissolving the bonds of matrimony under which such a course of conduct is possible. (*MacDonald* v. *MacDonald*, 155 Cal. 665, [25 L. R. A.

(N. S.) 45, 102 Pac. 927]; *Avery* v. *Avery*, 148 Cal. 239, [82 Pac. 967].)

Counsel for the defendant in the trial court cross-examined none of the witnesses who testified for the plaintiff, nor did he call any witnesses on behalf of the defendant. He rendered no better, although less efficacious, service to his client in this court, where he has filed no brief nor presented any argument on his behalf. Thus unassisted, we think it follows from what we have above set forth that the judgment should be reversed. It is so ordered.

Richards, J., and Waste, P. J., concurred.