The Beaver Falls Building and Loan Association v. Allemania Fire Insurance Company of Pittsburgh, Appellant.

110

Argued October 31, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Harold F. Reed* of *Reed and Ewing,* and with him *Horace Michener Schell,* for appellant.—The statute requires arbitration and appraisal of loss by the company and makes the same binding upon the mortgagee: Trustee Building and Loan Assn. v. Liverpool and London and Globe Insurance Co., 93 Pa. Superior Ct. 242; Bowers Co. v. London Assurance Corp., 90 Pa.

Superior Ct. 121; Gratz v. Insurance Co. of N. A., 282 Pa. 224; McFarland v. Kittanning Insurance Co., 134 Pa. 590.

*Philip E. Hamilton,* for appellee, cited: Swoope v. U. S. Fire Insurance Co., 87 Pa. Superior Ct. 349; McGonigle v. Susquehanna Mutual Fire Ins. Co., 168 Pa. 1; Welch v. British American Assurance Co., 148 Cal. 223; Ebensburg B. & L. Assn. v. West Chester Fire Ins. Co., 28 Pa. Superior Ct. 341.

OPINION BY BALDRIGE, J., February 27, 1931:

Is a mortgagee under a mortgagee clause in a standard policy of insurance bound by an agreement of appraisal between the owner of the property and the insurer and an award thereunder, made without his consent or knowledge?

James and Cora Johnson owned the premises upon which the defendant had issued a policy of fire insurance in the amount of $2,000, with a union mortgage clause attached providing that "loss or damage, if any......shall be payable to Beaver Falls B. & L. Asso. No. 1220—7th Ave. Beaver Falls, Pa. mortgagee." This policy was delivered to the plaintiff at the time the mortgage loan of $3,600 was placed upon the property by it. The plaintiff alleged that the premises had been totally destroyed by fire and that under the mortgagee clause it was entitled to recover the amount of its loss, provided it did not exceed the sum of $2,000—the balance due on its mortgage.

The insurance company defended on the ground that the owners of the property had entered into an appraisal agreement in accordance with the terms of the policy to determine the actual cash value of the loss, that an award of $1,200 was made pursuant thereto, and that payment in full had been tendered by check made payable to the plaintiff and the insured.

The defendant claimed that this appraisal and

award were binding upon the plaintiff under the terms of the policy and the mortgagee clause. At the trial the plaintiff was permitted to prove that the value of the property destroyed was greater than the award of the appraisers and the court refused to instruct the jury that plaintiff's recovery was limited to the amount of $1,200. Jury found a verdict for the plaintiff in the sum of $1962, upon which judgment was entered, and the defendant appealed.

The policy sued upon is the standard form authorized and required by the Act of Assembly, approved June 8, 1915, P. L. 919, a portion of which was reenacted by the Act approved May 17, 1927, P. L. 682. But as was said in 1 Joyce on Insurance, 2d Edition, Sec. 26-A, 546-7, "Although a standard form of policy is prescribed by statute, nevertheless upon its acceptance by the parties it becomes a voluntary contract between them which derives its force and efficacy from their consent. It constitutes their contract, and it must be construed by the same rules as similar contracts voluntarily entered into. And the fact that the legislature has prescribed a standard form of policy affords no reason for giving to a clause any different construction from that theretofore given by the courts to all similar contracts made without legislative sanction." See also Gratz v. Ins. Co. of North America, 282 Pa. 224. We must, therefore, refer to the policy and apply the cardinal rules of construction of a contract in order to determine the rights of the plaintiff as mortgagee and the liabilities of the company as insurer.

It would seem advisable to determine first if the mortgagee clause, for our present purposes, created a separate contract, entirely independent of the other provisions in the policy, or should the mortgagee clause and the policy be considered as one contract.

The legal status of the so-called mortgagee clause has been construed by the courts and defined by

text writers, and the views expressed are by no means harmonious. It has been said to be a separate and independent contract, and on the other hand it has been held that it must be interpreted in connection with, and is part of, the original .contract. The construction of this clause, insofar as it relates to the problem before us, has apparently not been decided in Pennsylvania or in any other jurisdiction where this form of standard policy is used. Counsel was unable to find any decision and our independent search proved fruitless. It has been held, however, to be a separate contract insofar that the rights of the mortgagee cannot be impaired by any action of the owner of the property.

In Knights of Joseph B. & L. Assn. v. Mechanics' Fire Ins. Co. of Phila., 66 Pa. Superior Ct. 90, the defendant denied liability on a suit brought by the mortgagee because notice of the change of title and ownership had not been given to the defendant as provided by the policy. The court held that the mortgagee clause was not an assignment of the policy or a loss clause payable to the mortgagee, but an independent contract of insurance, and that the policy remained in full force and effect for the benefit of the mortgagee.

In Reed v. St. Paul Fire and Marine Ins. Co., 67 Pa. Superior Ct. 110, the owner sold his interest in the property, subject to a mortgage, and the purchaser insured the property in a second insurance company and placed in the policy a mortgage clause in favor of the same mortgagee. The defendant contended it was not liable for any greater portion of loss than the amount of its policy should bear to the whole insurance. The court held that the apportionment condition was not incorporated in the contract between the mortgagee and the insurer; that the rights of the mortgagee were unaffected by any act or neglect of the mortgagor of which the mortgagee was ignorant.

See also Swoope v. U. S. Fire Ins. Co., 87 Pa. Superior Ct. 349; Syndicate Ins. Co. v. Bohn, 85 Fed. Rep. 165.

But the mortgagee clause cannot be severed from the policy of insurance if the insured has not violated the provisions of the policy. It is not self-sustaining under the facts with which we are dealing for it is in the policy that we find all of the facts, terms and conditions which are not incidental but essential to a recovery; the plaintiff could not proceed without relying on the policy; it is the very foundation of plaintiff's claim. We can see no just reason why the plaintiff should supersede in the contract the insured who is in no way in default.

In Aetna Ins. Co. v. Cowan, 111 Miss. 453, 71 So. 746, the court said: "This the appellee contends makes a new and independent contract between the mortgagee and the insurance company in no way dependent upon the original policy between the owner and the insured. It may be true that a new and independent contract is made between the mortgagee and the insurance company by the insertion of the mortgage clause, but after all the policy itself is the contract between the insurer and the mortgagee. It is upon the policy and its terms that the mortgagee must recover in the event of loss, and the only difference between the contract of the mortgagee and the insured are the provisions of section 2596...... If, as he insists, there exists an independent contract between himself and the insurer, where are the terms of that contract to be found except in the policy of insurance? The policy designates the kind of insurance undertaken. The policy designates the property the policy covers. The policy names the maximum amount recoverable thereunder," etc.

In the case of Erie Brewing Co. v. Ohio Farmers' Ins. Co., 81 Ohio 1, 89 N. E. 1065, the facts are very similar to the case at bar and in our judgment the reasoning of the court is sound. In the course of

the opinion it was said: "It would appear reasonable that, in respects not modified or limited by the express language of this mortgage clause, the plain provisions of the policy as between the insured mortgagor and the insurance company must prevail and be observed. The rights conferred by the clause spring from the contract relation which the mortgagor sustains to the company; and, but for saving words in the clause, the neglect or default of the insured might defeat the interests of both......This view leads to the conclusion that the principal contract must be observed, except as expressly modified, and that the rights of the mortgagee depend upon and must be worked out through the relation the insured sustains to the insurance company; that relation being one of solemn primary contract. Therefore an arbitration was in order where the principal parties could not agree. There is no provision in the mortgage clause that recognizes his right to select or be present when an appraiser is selected. That method of determining the loss is fixed in the policy and remains there after the mortgage clause is attached, and there is nothing in it which in any degree qualifies the authority for appraisal existing between the principal parties; and surely there could not be two appraisals, one according to the policy between the insured and the insurance company, and another at the behest of the mortgagee. There is nothing in the mortgage clause that provides notice of appraisal to the mortgagee. Two appraisals might not be for the same amount, and the situation would be unique."

We conclude that if the insured has complied with the terms and conditions of the contract, the policy and the mortgagee clause are parts of the same contract; that the interest of the mortgagee in the insurance covered by the contract shall not be invalidated by any act or neglect of the mortgagor or owner and, therefore, may be enforced independently

of the latter in case of any act or neglect on his part preventing a recovery on the policy by him.

That brings us to the consideration of the provisions in the policy. Referring to the mortgagee clause, we find: "Loss or damage, if any, under this policy shall be payable to Beaver Falls B. & L. Asso...... mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property," etc. That means that the loss shall be payable to the mortgagee as may be *determined under the provisions of the policy,* and it stipulates that "in case the insured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser...... An award in writing......shall determine the amount of sound value and loss or damage." The policy thus provides that the loss as determined is payable to the mortgagee "as interest may appear." The loss was determined in exact accordance with the policy. It will be observed that there is no provision that the mortgagee shall be a party to the appraisal proceedings. If it had been intended that the mortgagee was not to be bound thereby, it should have been so stipulated. The procedure followed the requirement of the covenant agreed upon and is binding on all the parties.

We are not unmindful that Welsh v. Brit. Am. Assur. Co., 148 Cal. 243, 82 Pac. 964; Harrington v. Fitchburg Mut. Fire Ins. Co., 124 Mass. 126; Hatha-way v. Orient Ins. Co., 32 N. E. 40, and a number of other cases in different jurisdictions, tend to support the contention of the plaintiff, but in the cases cited, the provisions of the contract are dissimilar to those under consideration, and, while the reasonings in

those cases are worthy of our consideration, they are not controlling in the case at bar.

Our conclusion is, that there is no provision in the contract requiring that the plaintiff should be notified of the appraisal, and that the award is binding on the plaintiff. The proposition propounded at the beginning of this opinion is, therefore, answered in the affirmative.

Judgment entered in the court below is reversed and it is hereby ordered that judgment be entered for the plaintiff in the sum of $1200 with interest from April 2, 1928, and costs.