[Civ. No. 1773. Second Appellate District.—November 29, 1915.]

## EMILY S. PERKINS, Appellant, v. GREGORY PERKINS, Jr., Respondent.

DIVORCE—DEFAULT—FINDINGS—CONSTRUCTION OF SECTION 131, CIVIL CODE.—Under the provision of section 131 of the Civil Code, requiring that in actions for divorce the court must file its decision and conclusions of law "as in other cases," the quoted words refer to the form of the findings, and are not to be taken as intended to relieve the trial judge in cases where default has been entered in a divorce action against one of the parties from making his decision in writing.

ID.—DEFAULT—ISSUES.—In view of the code provision that no divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission, or testimony of the parties, there are issues to be tried in actions where the adverse party has suffered default, as well as in cases where answers are filed.

ID.—EXTREME CRUELTY—GRIEVOUS MENTAL SUFFERING.—In order to constitute extreme cruelty of the character of grievous mental suffering, it is no longer necessary, as announced in the earlier decisions, that a perceptible effect of such suffering should be produced upon the body or health of the complaining party, but the rule is that whether in any given case there has been inflicted "grievous mental

suffering" is a pure question of fact, to be deduced from all the circumstances of each particular case, keeping always in view the intelligence, apparent refinement, and delicacy of sentiment of the complaining party.

ID.—EVIDENCE—DISAGREEABLE CONDUCT OF DEFENDANT—UNWARRANTED RESTRICTION OF PLAINTIFF'S EXAMINATION.—In an action for divorce on the ground of extreme cruelty, it is prejudicial error to refuse to permit the plaintiff, while being examined by her own counsel, to testify as to the acts of the defendant at the times he would intrude himself upon her privacy, on the ground that the witness should not be embarrassed as to matters that could not be corroborated, and that such testimony would be of no value and disregarded by the court.

ID.—RIGHTS OF LITIGANTS—DUTY OF COURT.—In actions for divorce, the complaining party has the same right as any other litigant in any other class of actions, not only to the opportunity to present fully his or her case, but to every reasonable assistance of the court in the premises.

ID.—SUBJECT OF MENTAL CRUELTY—TESTIMONY OF PHYSICIANS.—In such an action, physicians of the plaintiff may testify generally as to the subject to which plaintiff ascribed her disturbance of mind and health when she consulted them, as corroborative of her claim that the same was due to marital difficulties.

ID.—CORROBORATION OF ACTS OF CRUELTY.—When the cruelty consists of successive acts of ill treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff; it is sufficient corroboration if a considerable number of important and material facts are so testified to by other witnesses, or there is other evidence, circumstantial or direct, which strongly tends to strengthen and confirm the statements of the plaintiff.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Hutton & Williams, Edwin A. Meserve, and Shirley E. Meserve, for Appellant.

No appearance for Respondent.

JAMES, J.—This is an appeal taken from a judgment denying the plaintiff a decree of divorce.   The defendant suffered default, and the court heard testimony at great length, all of which is presented here by transcript of the reporter.   The

ground alleged was extreme cruelty. As described in the complaint, the facts relied upon were those which it is asserted established a course of cruel conduct practiced by the defendant against the plaintiff, and which commenced within a few weeks after their marriage in June, 1911, and continued almost uninterruptedly for a year and a half, or until the plaintiff left the defendant. At the conclusion of the testimony the court orally summed up the case as being one of incompatibility of temperament, for which no divorce could be granted, and declared that the proof did not show extreme cruelty. No findings of fact were made. The only purported finding of any kind is the recitation found in the judgment as follows: "The court finds the evidence did not prove extreme cruelty and is insufficient to warrant a decree of divorce." This finding, if it was intended as a finding of fact, and if written findings are required to be made in divorce actions, was wholly insufficient. (*Franklin* v. *Franklin,* 140 Cal. 607, [74 Pac. 155].) One of the claims of appellant is that the judgment should be reversed, because it is unsupported by findings which, it is argued, are required to be made under the provisions of section 131, Civil Code. This contention presents for consideration the question as to whether in actions for divorce, where the adverse party has made default, the court is required to express its decision in the form of findings of fact. Section 632 of the Code of Civil Procedure requires the court generally, where a trial of a question of fact is had, to give its decision in writing. In the case of *Foley* v. *Foley,* 120 Cal. 33, [65 Am. St. Rep. 147, 52 Pac. 122], it was held that in a divorce case, where no answer was filed, there was presented no issue of fact, strictly speaking, to be determined by the court. And in *Waller* v. *Weston,* 125 Cal. 201, [57 Pac. 892], considering the requirement of section 632, Code of Civil Procedure, it was said: "It is contemplated by our law that findings of fact shall be made only upon issues joined by the pleadings under section 590 of the Code of Civil Procedure." At the time these decisions were rendered section 131 of the Civil Code did not contain the provision requiring the court to make its decision in divorce cases on the questions of fact in form as in other cases. That section in its first provision is as follows: "In actions for divorce, the court must file its decision and conclusions of law as in other cases, and if it determines that

no divorce shall be granted, final judgment must thereupon be entered accordingly.'' In construing that portion of this section which declares that in divorce actions the decision and conclusions of law shall be filed ''as in other cases,'' we are inclined to the view proposed by the appellant, which is that the words ''as in other cases'' refer to the form of the findings, and should not be taken as intended to relieve the trial judge in cases where default has been entered in a divorce case against one of the parties from making his decision in writing. This section coming as new legislation following the decision in the Foley case, we may, we think, properly indulge the presumption that the legislature intended to correct what it deemed to be a deficiency in the law. Moreover, it seems to us not to be correct to say that there are no issues to be tried in divorce actions, where default has been suffered by a defendant party, when the law requires strict proof to be made of a plaintiff's cause of action. (Civ. Code, sec. 130.)

In this view we are in strict accord with the reasoning of the court in the case of *Nelson* v. *Nelson*, 18 Cal. App. 602, [123 Pac. 1099], where the court, by Justice Burnett, said: ''Ordinarily, there would be no 'trial of a question of fact' where the fact is admitted by the failure to deny it, but where the asserted fact is the ground upon which a party relies for divorce, it must be established as though denied, since 'no divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission or testimony of the parties.' '' The court in that decision takes notice of the provisions of section 131 of the Civil Code, and concludes that. where a cross-complaint stands in an action for divorce without answer, the trial judge is not excused from making his decision in writing upon the issues of fact proposed therein. It is only fair that a party who has suffered an adverse decision at the hands of the court, based upon alleged insufficient proof, should have the benefit of a written declaration as to the particular conclusions arrived at by the court. This case most aptly illustrates the sound reason for such a requirement. For aught that appears from the judgment made by the court in this case, the trial judge may have considered that all of the facts alleged had been sufficiently proven and corroborated, but had determined from those facts that, as a legal conclusion, the acts complained of did not amount to extreme cruelty. If such was his conclu-

sion, it may be unhesitatingly said, upon the complete record of the testimony as it is presented, that such a determination is not borne out by the proof. The plaintiff here relied upon a course of conduct practiced by the defendant habitually, regularly, and almost continuously from a date a few weeks after the marriage, down to the day that she finally left him. This conduct, as alleged and testified to by her, consisted in acts which were calculated to irritate and humiliate the plaintiff and produce the exceedingly high state of nervous tension and distraction to which it was shown she had finally been driven. It will serve no useful purpose to recite the evidence with great detail. In the main, the facts were: The plaintiff, at the time of her marriage to the defendant, was a widow having two sons by a former marriage, to whom she was much attached and who were members of her household except at the times they were away at school and college; that defendant prior to his marriage represented that he had a business by which he earned about three hundred dollars per month; that plaintiff was possessed of a considerable amount of property and an income large enough to supply all the needs of herself and family; that knowing defendant had habitually supported an invalid mother, immediately upon her marriage with him, and in order to provide for the support of this mother during the time that plaintiff and her husband would be away on their wedding trip, she gave the defendant six thousand dollars for the use of his mother; that thereafter she proposed and was willing to allow him several hundred dollars per month for his personal use out of her own estate in return for very nominal services to be performed by him in connection with the management of her property; that she desired to and did retain direct charge of large property interests, and that from the beginning this attitude on her part to manage her own affairs seemed to exasperate the defendant; that he became moody and upon many occasions shown in the testimony would become sullen and cry and refuse to mingle with the household, although he persisted in remaining in the presence of the plaintiff practically all the time, both day and night; that so persistent was he in his personal attentions that plaintiff could not even visit her bathroom without his accompanying her; that upon one occasion he removed the lock from the bathroom door in order to prevent the plaintiff from denying him access to that room

while she was making use of it; that he would not allow her to telephone to her lady friends without being present and standing near the telephone, and at times, if anything was said which did not particularly please him, he would take the telephone away from the plaintiff and hang it up; that in the presence of her lady friends, and generally in the presence of guests, he would act in a moody, sullen, and insulting manner toward her; that upon one or more occasions he insisted upon her leaving the house at a very early hour in the morning to attend communion service when she was in a sick condition; when she desired to have a cup of coffee before starting, and when the servant offered her the coffee, he rudely seized her by the arm, forced her through the door, and compelled her to go with him in her weak condition without nourishment; that when he became displeased at anything, which was a frequent and constant occurrence, he would sulk and cry and stare at plaintiff, and when plaintiff would beg him to tell her what was the matter would make no response, and would sometimes continue in that attitude for three or four days, not once speaking to the plaintiff; that the defendant on various occasions accused the plaintiff of being untruthful and treated her in an uncivil and contemptuous manner, both in the presence of her friends and strangers and privately. This course of conduct was shown to have been quite the regular thing with the defendant. The evidence showed that plaintiff was naturally a nervous woman; that she had always dwelt in a peaceful and harmonious atmosphere and had been very happy in her family relations; that the conduct of the defendant so preyed upon her nervous organism that she became restless and sleepless, and when examined by her family physicians, after having lived with the defendant for some time, was found to be in such a condition of nervous unrest as to threaten her complete prostration. These physicians had known the plaintiff prior to her marriage and were able to testify that she had always been normal and, as one of them said, organically she was without disease. That the general course of conduct was as has been described, the plaintiff testified to fully, and in a general way all of the facts stated by her were corroborated by independent witnesses. While we think that the judgment in this case must necessarily be reversed for lack of any findings of fact, we have deemed it advisable to consider the evidence as though

the law did not require such findings in default divorce
cases. We do this more particularly because the question of
the sufficiency of the evidence is argued in the very able brief
presented by counsel for appellant, as well as certain alleged
errors which the court committed in the course of the trial.
To a proper end, too, this discussion may be of benefit to the
trial court upon a rehearing of this matter in the event that
any such is had. We may fairly surmise from the oral re-
marks made by the trial judge, which of course have no
formal potency as indicating what his findings of fact might
have been, that he did not consider that the evidence, assum-
ing the whole truth of it and assuming sufficient corrobora-
tion, as there was, showed a case of extreme cruelty within
the meaning of the definition given by the Civil Code. In
the earlier decisions of our supreme court, in consonance with
the ancient rule, it was in effect announced that there could
be no extreme cruelty as a result of mental irritation until a
perceptible effect had been produced upon the body or health
of the complaining party. In the case of *Waldron* v. *Wald-
ron,* 85 Cal. 251, [9 L. R. A. 487, 24 Pac. 649], the court, in
a majority opinion, said: "Although the character of the
ill treatment, whether it operates directly upon the body or
primarily upon the mind alone, and all the attending circum-
stances, are to be considered for the purpose of estimating
the degree of the cruelty, yet the final test of its sufficiency,
as a cause of divorce, must be its actual or reasonably appre-
hended injurious effect upon the body or health of the com-
plaining party." This was what might be called "the rule
of the Puritans," and it is a cause for gratification to know
that our law as it has since been established proposes no such
extreme and harsh definition for extreme cruelty as it may
furnish ground entitling a party to a divorce. In the Wal-
dron case, Justice McFarland, dissenting, sounded the note
which resulted in a later modification of the rule announced
in that decision. His words of protest may well be remem-
bered, when he said: "This doctrine makes legal cruelty de-
pend, not on the misconduct of the husband, but on the
endurance of the wife; not on the guilt of the wrongdoer, but
on the vitality of the victim. The anguish of the mind must
have eaten through the flesh and exhibited itself in bodily
disease before there can be any legal evidence of cruelty. But
some women, like some men, have inherited from sturdy an-

cestors physical constitutions so robust, with bone and blood, and muscle and nerve, and heart and lungs, so charged with vitality, that the woes of a Lear would not wear out the machinery or obstruct the currents of healthy physical life. Must such a woman suffer on forever, and only the weak who faint at a gentle reproach be relieved?'' Our supreme court receded from the conclusions of the rule asserted in the Waldron case when it considered the case of *Barnes* v. *Barnes*, 95 Cal. 171, [16 L. R. A. 660, 30 Pac. 298]. In the opinion there it was said: ''The common judgment of mankind recognizes the fact that there may be unfounded charges and cruel imputations which are not more easily borne than physical bruises, and the necessary effect of which is to cause great mental distress to the person against whom they are made. Whether in any given case there has been inflicted this 'grievous mental suffering' is a pure question of fact, to be deduced from all the circumstances of each particular case, keeping always in view the intelligence, apparent refinement, and delicacy of sentiment of the complaining party.'' We cannot imagine from the proof made in this case that the trial judge was impressed with the view that the plaintiff was not a woman of great refinement of sensibility, intelligent, and cultured, for the evidence tends to show nothing else. Even where the judge, prompted evidently by personal acquaintance with the parties, sought to show that the plaintiff had always been of a nervous temperament, the answers given in the affirmative would tend to add to rather than detract from the strength of the plaintiff's proof, in that they assisted to show that she was of such a temperament as would be more easily and deeply affected by the reprehensible conduct of the husband. In fact, upon all of the material issues presented by the complaint, there is nothing in the record which suggests a case which might be termed one of conflicting evidence. During the progress of the trial, counsel for the plaintiff, apparently to prove with exactness the disagreeable conduct of the defendant, asked the plaintiff while on the witness-stand to describe exactly the acts of the defendant at the times when he would intrude himself upon her privacy, and the court interrupted and told counsel that he ought not to embarrass the witness in regard to matters that could not be corroborated, saying: ''I don't pay any attention to those things.'' Counsel suggested, and very correctly, that all of

the matters offered in proof in a divorce action did not need corroboration, but the court did not recede from the attitude expressed in the statement referred to, and counsel then desisted from further examination along that line. We think that the action of the court in this regard placed an improper restriction upon the plaintiff in the conduct of her case. As a litigant before the court she was entitled to offer and have received all competent legal testimony, and it was not for the court to prejudge the effect of this testimony and to announce or suggest in advance that that testimony, taken in connection with all of the proof made in the case, would be of no value, and would be disregarded by him. The plaintiff as a witness was being examined by her own counsel. She was "in the hands of her friends"; hence, why this extreme solicitude on the part of the court lest her own attorney should embarrass her by requiring intimate disclosures to be made? She was there under the necessity of making such intimate disclosures in order to apprise the court fully of the discomfort of the position she had occupied with the defendant and of the degree to which her mental sensibilities had been preyed upon. We agree very completely with the statement made in the brief of counsel that trial judges have not the duty in divorce cases to do anything except to see that the law is strictly and fairly complied with. A suitor in a divorce action must, as a litigant, stand in as favorable a light before the law as the plaintiff in a suit on a promissory note. Our legislature has declared the policy of the law as it shall affect actions for divorce, and has provided that relief shall be granted to parties when certain grounds have been established. In the establishment of these grounds the complaining party has the same right as any other litigant in any other class of actions, not only to the opportunity to present fully his or her case, but to every reasonable assistance of the court to be lent in that direction. We think that the attitude of the trial judge in restricting counsel in his examination of the plaintiff as to the matter adverted to was error of a prejudicial kind. The case of *Pratt* v. *Pratt,* 141 Cal. 247, [74 Pac. 742], is in point. We think, too, that the court might properly have allowed the physicians of the plaintiff to testify generally as to the subject to which plaintiff ascribed her disturbance of mind and health when she consulted them. Not that it would have been proper to have admitted her statement in detail as to

any acts committed by the defendant, but merely as tending to show that her disturbed condition was due to marital difficulties. Such evidence is admitted as corroborative in its tendency, just as in criminal actions where the charge may be rape, it is allowed to be shown that the prosecutrix made complaint of the fact that she had been raped at a time reasonably near to that of the alleged occurrence. Such testimony may, in a general though perhaps not in a strict sense, be classed as part of the *res gestae.* It was not necessary that all of the matters alleged and testified to by the plaintiff should be supported by corroborative evidence. "Where the cruelty consists of successive acts of ill treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff; it is sufficient corroboration if a considerable number of important and material facts are so testified to by other witnesses, or there is other evidence, circumstantial or direct, which strongly tends to strengthen and confirm the statements of the plaintiff. The main purpose of section 130 is to prevent collusion." (*Andrews* v. *Andrews,* 120 Cal. 186, [52 Pac. 298]; *Avery* v. *Avery,* 148 Cal. 242, [82 Pac. 967].)

Our conclusion is, not only that the judgment lacks the support of sufficient findings of fact, but that the evidence does not sustain the judgment denying a divorce, and that the court committed error as to its rulings on the admission of testimony which was prejudicial to the rights of the plaintiff.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.