[Civ. No. 3755.   Second Appellate District, Division One.—November 1, 1921.]

## SELMA DAHNKE, Respondent, v. HENRY DAHNKE, Appellant.

[1] DIVORCE—EXTREME CRUELTY—SELF-DIRECTED ACTS OR OMISSIONS NOT IMPAIRING HEALTH—INSUFFICIENCY TO SUPPORT DECREE.—The language of section 94 of the Civil Code, defining extreme cruelty, should not be construed as referring to traits of character, habits of cleanliness, or conditions of bodily health, as to all of which, unless otherwise provided by statute, the parties must be deemed to have assumed the burden of informing themselves by association, acquaintance, and inquiry before contracting marriage.

[2] ID.—PRACTICE OF MASTURBATION—INSUFFICIENT CORROBORATION.—An interlocutory decree of divorce based upon a finding that the defendant was given to the practice of masturbation is not sufficiently supported, in the absence of any evidence of the commission of such acts other than the testimony of the plaintiff that she observed indications thereof.

---

1.   Habits or course of conduct as cruelty warranting divorce, notes, 29 Am. Dec. 674; 73 Am. Dec. 619; 40 Am. Rep. 463; 65 Am. St. Rep. 69; Ann. Cas. 1918B, 480, 500; 51 L. R. A. (N. S.) 282.

APPEAL from a judgment of the Superior Court of Orange County.  Z. B. West, Judge.  Reversed.

The facts are stated in the opinion of the court.

Eden & Koepsel for Appellant.

Head & Rutan and Chas. D. Swanner for Respondent.

SHAW, J.—Defendant appeals from an interlocutory decree of divorce granted plaintiff upon the ground of extreme cruelty.

The parties were married on October 19, 1910, and lived together as husband and wife until May 11, 1917, at which time plaintiff left defendant.  As alleged in the complaint and found by the court, defendant at the time of the marriage was afflicted with a loathsome, incurable skin disease, of which fact he did not acquaint plaintiff before the marriage and knowledge of which plaintiff did not obtain until after the marriage; that during the time plaintiff and defendant lived together he would go unbathed for several weeks at a time and his diseased skin would become very offensive and loathsome, and that he was given to the practice of masturbation.

The contention of appellant is, first, that these findings are not justified by the evidence; and, second, that if so warranted, they are insufficient to support the judgment. It appears from the testimony of Dr. Doman, called as a witness by plaintiff, that defendant was afflicted with a skin trouble which the witness described as a dry skin; that is, a dry condition of the epidermis, due to lack of oil secretions, and differed from other persons in that his skin was less oily, causing a tendency to dryness due to which fact it would scale; that it did not affect defendant in any way at all; that while it was without odor, "some people might consider it disagreeable and others wouldn't pay attention to it"; that as to cleanliness, the condition did not render it necessary for a person to be more than ordinarily careful in bathing and care of the person; that he had for years been the physician of defendant and his family, and that his condition as to cleanliness was that of the ordinary rancher. Further describing defendant's condition, he said that there

was ''a little flaking all the time, just the same as you or I are shedding our skin all the time, only to a greater degree than you or I shed our skin. . . . There is a certain amount of desiccation or shedding off of the skin with anyone all the time, only on Mr. Dahnke it was of a greater degree, I would say as much as three or four times greater and a little larger flakes''; that while the trouble was incurable, it could be relieved by the use of oil which, under his advice, the defendant at times used. The testimony of plaintiff is that her husband's body was in a scaly condition and dark from dirt, and that the scales would come off in the bed and in his clothes; that she slept with her husband for some two years, until the baby was born, at which time she ceased to occupy the same bed with him because she could not stand it any longer, after which and prior to her leaving him she found indications of the practice of self-abuse; that the cause for leaving him was that she could not stand it any longer on account of the way he acted and insisting upon her sleeping with him; that he refused to properly bathe himself ''unless she positively insisted upon it and got the water ready''; but that none of his alleged acts or his condition endangered her health. Another witness, Blanche Smith, on behalf of plaintiff, testified that defendant never looked clean to her and when around him she noticed an odor like that perceptible in a man working out of doors and sweating in the dust and dirt and taking care of horses, and which is common in such cases where the man does not take a bath every evening when he comes in from work.

It is apparent from this *résumé* of the testimony, which in substance, other than the fact that defendant bared his arm for the inspection of the trial judge, is all the evidence presented by the plaintiff touching the question that defendant was afflicted with a skin trouble, which, however, as testified to by the physician, was not contagious, and, according to plaintiff, did not endanger her health or prevent the consummation of the marriage relation. It is also apparent from the record that, due to such fact, or for other reasons, she formed a violent dislike for her husband, with whom she lived as husband and wife for nearly seven years.

[1] By section 94 of the Civil Code extreme cruelty is defined as "the wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage." The language of the statute would seem to import acts directed toward the other party and with a malevolent motive. While it is conceivable a case might be imagined which would fall within the meaning of the words without such motive, nevertheless, as to self-directed acts or omissions which do not impair or constitute a menace to the health of the other spouse or interfere with the consummation of the marriage relation, the language used should not be construed as referring to traits of character, habits of cleanliness, or conditions of bodily health, as to all of which, unless otherwise provided by statute, the parties must be deemed to have assumed the burden of informing themselves by association, acquaintance, and inquiry before entering into a contract of such vital importance not only to themselves but to society in general.

Conceding that marriages may be annulled for the causes specified in section 82 of the Civil Code, the action is not for the *annulment* of the marriage on *account of fraud* practiced by defendant upon plaintiff in withholding from her information as to his condition, but on account of his condition of health, the character of which she had been fully cognizant of for a number of years, during which she lived and cohabited with defendant. It may be that defendant did not bathe as often as plaintiff thought he should. This, however, is a subject upon which a diversity of opinion might well exist, depending upon facility therefor, environment, and nature of employment, and should be left to individual taste; at all events, the frequency with which either spouse should take a bath should not, in such cases as this, be made the subject of judicial cognizance. Conceding defendant's failure to bathe as often as his wife thought necessary, unless she, as stated, prepared the bath and insisted upon his so doing, and the fact that he was afflicted with the skin trouble described by her witness, Dr. Doman, which condition differed from that of normal individuals only in the degree of exfoliation or rapidity with which nature eliminated the outer cuticle of the body, it furnished no ground for the claim that defendant was guilty of extreme cruelty toward plaintiff;

and her living with defendant for some seven years after discovering the condition, during all of which time she (though, according to her testimony, reluctantly) cohabited with him as his wife without injury to her health or menace thereto, is evidence of the fact that it did not interfere with the discharge of her duties as such, or defeat the purpose of the marital relation, without which she has no cause for legal complaint.

[2]  As to the other finding upon which the court based the judgment, there is no evidence, even on the part of the plaintiff, other than her testimony, that she saw indications of defendant's alleged unnatural and disgusting acts; they were not committed in her presence. (*Wood* v. *Wood,* 141 Mass. 495 [55 Am. Rep. 491, 6 N. E. 541]; *Huff* v. *Huff,* 73 W. Va. 330 [51 L. R. A. (N. S.) 282, 80 S. E. 846].) Moreover, there is not the slightest testimony in corroboration thereof. While this court in the case of *Perkins* v. *Perkins,* 29 Cal. App. 77 [154 Pac. 483], held that where the alleged cruelty consists of successive acts of ill-treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff, but it is a sufficient corroboration if a considerable number of important and material facts are so testified to by other witnesses, or circumstantial evidence offered which tends to strengthen and confirm the statements of the plaintiff, the case as presented here does not fall within the rule so announced. As stated above, the fact that defendant was afflicted with a skin trouble is insufficient to support the judgment; hence the judgment depends for its sole support upon the other finding, as to which there is not only no corroboration, but the acts are denied by defendant.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.