[Civ. No. 13451. First Dist., Div. One. Nov. 14, 1947.]

ZONA McGANN, Appellant, *v.* WILLIAM R. McGANN, Respondent.

Charles Bagby for Appellant.

Charles McLaughlin and A. J. Harwood for Respondent.

BRAY, J.—There are three points made on this appeal from a judgment awarding defendant upon his cross-complaint a divorce on the grounds of extreme cruelty: (1) lack of corroboration of defendant's testimony; (2) refusal of the court to admit certain testimony; and (3) abuse of discretion by the court.

### Corroboration

The parties were married in 1942, while defendant, a dentist by profession, was an officer in the United States Army. The next year a son was born to them, who, at the time of the trial, was approximately 3 years of age. The parties lived together until the defendant was sent overseas in October, 1943. On October 18, 1945, defendant returned, and except for a short stay in Brookdale, the parties lived with plaintiff's mother in San Francisco until their separation. On December 13, 1945, defendant left plaintiff and the child and went to live with his parents. Through the intercession of a minister, whose help plaintiff had sought, defendant returned to plaintiff for a period of 10 days, and then left finally.

Plaintiff, shortly thereafter, complained for divorce on the grounds of extreme cruelty and the defendant cross-complained on the same ground.

At the trial, plaintiff testified that on the day defendant left home he told her that his father had told him to leave her, and that he had to obey his father; that later, in a telephone conversation, defendant stated that he did not love her and never had. Defendant admitted telling her that he no longer loved her, but denied that he stated he never had loved her. Plaintiff's mother testified defendant was quiet and would sit around the house moping with his head in his hands, and that on the day the parties separated she heard

defendant state that he had to obey his father. On this testimony the court denied plaintiff's prayer for a divorce, stating that there was not sufficient evidence to justify a finding of extreme cruelty; that if anything, the evidence showed desertion, which, however, had not existed for the statutory period. Plaintiff does not complain of this ruling. In fact, at argument, plaintiff contended that neither party should have been granted a divorce.

Defendant, under his cross-complaint, testified that plaintiff was cold toward him, nagged him, wrote him whining letters while overseas, turned her back on him while in bed, attempted to regulate his life and refused to permit him to go bowling with his father, invited him to leave home, made it difficult for him to practice dentistry, and attempted to have him arrested. Plaintiff contends that these acts do not constitute cruelty, especially as plaintiff denied them and explained that the so-called whining letters were written at defendant's request that she write him about everything that was going on at home, even the unpleasant things, and that the arrest incident was due to defendant taking the family automobile without her knowledge, and her reporting it to the police as having been stolen.

As said in *Serns* v. *Serns*, 70 Cal.App.2d 527, at page 528 [161 P.2d 417]: "The evidence in the case is conflicting and in an action for divorce, like other actions, a finding of the trial court is binding if supported by sufficient evidence. This includes the finding of the infliction of grievous mental suffering by one party upon the other. ▪ In passing upon this particular finding the trial court must consider all the circumstances of the case, including the intelligence and refinement of the party charging cruelty. ▪ The conclusion reached by the trial court will not be reversed on appeal unless the evidence is so slight as to indicate an abuse of discretion. (*Keener* v. *Keener*, 18 Cal.2d 445 [116 P.2d 1].) The evidence outlined above is ample to give support to the findings of the trial court."

In *Blanchard* v. *Blanchard*, 10 Cal.App. 203 [101 P. 536], the court held that while incompatibility of temperament furnishes no grounds for divorce in California, it may properly be taken into consideration as explaining the course of conduct of a party. "Incompatibility of temperament is disclosed by the record also, and that mutual confidence and affection essential to conjugal happiness and the proper

maintenance of the marriage state seems to have been entirely wanting." (P. 205.)

Plaintiff cites *Dahnke* v. *Dahnke*, 55 Cal.App. 12 [202 P. 894], as authority for her contention that coldness of a spouse towards the other is not included in the term extreme cruelty. There is nothing in that case to that effect. While perhaps coldness alone is not sufficient to constitute extreme cruelty, it is included in the term, and, depending upon its degree, is one of the matters which may militate against a successful marriage.

Defendant's corroboration consisted principally in the testimony of his father that prior to the time defendant went overseas, he observed that plaintiff had ordered defendant around and would create a scene if he did not do as ordered, that she was cold and indifferent toward defendant, that she objected to him and his wife seeing the child, that she was mercenary, her conversations running to money, defendant's Army allotment and insurance; that she showed no interest in the fact that defendant's Army chaplain had written witness that defendant was worried about things at home (apparently referring to the fact that plaintiff's refusal to allow the grandparents to see the child had been communicated to defendant), and intimating that such worries were affecting defendant's health; that she told him the defendant was a "heel." Defendant's mother testified that plaintiff never expressed any love or affection for, nor said anything kind about him, and was cold and indifferent toward him and did not show any concern or worry about his going overseas. The testimony of both of the corroborating witnesses was based on their observation of the parties prior to the time defendant went overseas. Because of friction between them and plaintiff, they did not visit the parties after defendant's return.

Plaintiff contends that the testimony of defendant's parents did not constitute corroboration of any acts of cruelty, and that, if it did, as there was no corroboration of defendant's testimony as to what occurred in the brief time he and plaintiff lived together after his return from service (less than two months), it was not sufficient.

"No divorce can be granted . . . upon the uncorroborated statement, admission, or testimony of the parties. . . ." (Civ. Code, § 130.)    "The extent of the corroboration necessary for the granting of a decree of divorce is not defined in any of our statutes. It is not necessary to corroborate all of

the acts of cruelty charged by the party to whom the decree is granted. Where a number of charges of cruelty have been made, corroboration of a single act of cruelty may be sufficient. (*Ungemach* v. *Ungemach,* 61 Cal.App.2d 29 [142 P. 2d 99]; *Keener* v. *Keener, supra* [18 Cal.2d 445].) ▉ Moreover, the rule requiring corroboration is not so strictly applied in hotly contested divorce actions as it is in actions where a decree is demanded upon the default of the opposing party. The principal object of the corroboration rule is to prevent collusion between the parties, and where it is clear from the evidence in a contested action that there is no collusion the court is justified in granting the decree upon evidence which is only slightly corroborated if otherwise the court is satisfied that the prevailing party is entitled to a decree. (*Minnich* v. *Minnich,* 127 Cal.App. 1 [15 P.2d 804]; *Ungemach* v. *Ungemach, supra.*)'' (*Serns* v. *Serns, supra,* p. 529.)

▉ Tested by the foregoing rules the corroboration here was sufficient.

Plaintiff contends that the corroborated acts of cruelty all occurred before defendant went overseas, and his return to plaintiff constituted a condonation of those acts, and therefore any new acts required additional corroboration. Whether defendant actually condoned these acts does not appear in the record. It is apparent, however, that such condonation, if it existed, was based on the hope of the parties being able to get along and the plaintiff treating defendant differently than she had. This hope was not fulfilled, nor did plaintiff act differently. There is no requirement in the law that where acts of cruelty occur and the injured spouse is willing to try to make the marriage last, and the acts continue, such later acts must be corroborated. There can be no question in this case of collusion between the parties as to divorce and hence, as stated in the Serns case, *supra,* the defendant's evidence needed but slight corroboration.

### . *Rejection of Evidence*

Plaintiff contends the court refused to admit certain testimony (1) bearing on the merits of the divorce action, and (2) bearing on the amount of support to be awarded for the child. The second point will be considered later in connection with the contention that the court abused its discretion as to the amount awarded.

▉ The plaintiff was testifying that defendant's parents refused to spend with plaintiff and defendant the last days

before defendant went overseas, and that defendant told her that his parents had broken up his first marriage and that they were trying to do the same with this marriage, and begged her not to let them interfere. Thereupon defendant's counsel broke in with an objection to the relevancy of this testimony. Plaintiff stated that it was preliminary to and for the purpose of showing the later actions of defendant with regard to the attitude of his parents. The court then said: "All right, just skip the preliminaries, then, because I would not pay any attention to what she says now. They had a discussion about the parents, and he begged her not to let the parents interfere with his marriage. There is nothing cruel about that." Just what the court meant by the statement "I would not pay any attention to what she says now," cannot be determined. Assuming that it was error for the court to make this statement, it was error without prejudice, first, because plaintiff was not then asked what were the later actions of the defendant toward his parents, but seemed to abandon the subject; and secondly, because later in the case plaintiff did testify that defendant was influenced by the attitude of his parents, even to the extent of obeying the father's instructions to leave plaintiff and the child.

■ The court ruled immaterial a question concerning the parents' attitude towards the young couple bearing children. Inasmuch as plaintiff stated, after the court ruled, "Very well, your Honor. I will abide by your Honor's ruling *and withdraw it*," plaintiff thereby waived any error in the ruling. (Emphasis added.)

### Abuse of Discretion

■ The claim that the court abused its discretion in granting defendant a divorce is answered by the fact, as we have hereinbefore shown, that there is substantial evidence to support the court's findings in that respect. ■ But a more serious question arises when we consider the fact that the court awarded plaintiff only the sum of $40 monthly for the support of the 3-year-old child. Defendant had left the service, and at the time of the trial had been practicing his profession of dentistry for only a week over six months. He was sharing offices with the dentist with whom he had practiced before the war and who had taken over his practice when he went into the service. Ruling on an objection to a question asked plaintiff by her counsel, evidently intended to bring out an answer to the effect that plaintiff claimed that the defendant played golf when he ought to

have been in his office, the court said, "I am not interested in his earning ability. I am only interested in what he is really making. . . . I cannot order a payment upon the basis of his ability. I can only order it upon the basis of what he actually receives." In the early case of *Eidenmuller* v. *Eidenmuller*, 37 Cal. 364, the rule was laid down that allowances for support may be based on the husband's earnings or "his ability to earn money." (P. 366.) The rule was reaffirmed in *Peyre* v. *Peyre*, 79 Cal. 336 [21 P. 838].

Defendant's father kept the books for defendant and prepared a profit and loss statement for the first five months, approximately, that defendant had been practicing, which statement was admitted in evidence. It showed an increasing gross income: For February, $446; for March, $588; for April, $672; for May, $1057; and for the first 24 days in June, $734; and an average monthly net income of $292.60.

While plaintiff was examining defendant concerning an item of expense for a cabinet, a colloquy developed between plaintiff and the court, in which the court made the statement that it was only interested in the defendant's gross income and not in the expenditures he made, nor his net income, and that a lot of time was being wasted in examining concerning the latter. Plaintiff complains of this as error. However, it was error in her favor. The defendant is the only one who could object to the court's apparent impression that support allowances must be based upon gross rather than net income.

The sum awarded was unquestionably low, but it is doubtful if under all the circumstances we can hold that the court abused its discretion in awarding it. Defendant was granted the right to have the child with him on alternate week-ends. Perhaps the court took into consideration the fact that this would relieve the plaintiff of some of the expense of caring for the child, and would thereby indirectly increase the amount the support of the child would cost defendant. Defendant, too, was just getting started in the rebuilding of his dental practice, and while the first five months' experience showed that apparently he would soon have a substantial practice, and the court might well have taken that into consideration and awarded more support, the court probably had in mind, as have we, that there is no finality to the award made. The plaintiff had, and now has, the right to apply again to the court for a change in the allowance. The only justification for such a low allow-

ance, in view of the defendant's income as shown during the last two months included in the statement, in view of the inadequate income of the mother, would be that the court feared that such income might be a "flash in the pan," and not represent a condition that might continue. ▉ Likewise, the court's error in failing to consider the matter of the defendant's earning ability is without prejudice, for to grant an award on future earning ability based on such a short actual experience of practice might be too speculative, especially as the amount awarded has no aspects of finality. If his earnings have continued at the same rate, or increased, the court, upon application, necessarily will be required to award a substantially larger sum.

The judgment is affirmed.

Peters, P. J., concurred.

WARD, J.—I concur in the order affirming the judgment. I am convinced that the record does not disclose an abuse of discretion on the part of the trial court. For that reason I do not find it necessary to form an opinion on the factual question of the propriety of the amount awarded as maintenance for the child.