[No. C014003. Third Dist. Dec. 16, 1993.]

COUNTY OF YOLO et al., Plaintiffs and Respondents, v.
MICHELLE YVONNE GARCIA, Defendant and Appellant.

1772

## Counsel

Legal Services of Northern California, Inc., David E. Jones and Gary F. Smith for Defendant and Appellant.

David C. Henderson, District Attorney, and William C. Schemel, Deputy District Attorney, for Plaintiffs and Respondents.

## Opinion

**BLEASE, Acting P. J.**—Michelle Garcia appeals from a judgment in favor of the County of Yolo (the County) directing that she pay child support under Welfare and Institutions Code section 11350.[1] The judgment awards the County restitution of a portion of the Aid to Families With Dependent Children (AFDC) benefits paid Garcia on behalf of her older son, during a period when he was in foster care. Garcia contends that the court erred because her sole income was AFDC benefits and there was no showing she

[1]All references to a section are to the Welfare and Institutions Code unless otherwise indicated.

shirked her obligation to seek work. She also contends that the court erred because she was the caretaker of her younger son, who was less than three years old, and thus exempt from seeking work under the AFDC statutes.

Both contentions have merit. There is no showing that Garcia failed to seek or accept employment. The AFDC statutes manifest a public policy that a single parent of a very young child be permitted to decline work outside the home.

We will reverse the judgment.

### FACTS AND PROCEDURAL BACKGROUND

Although portions of the trial were not reported, the essential facts are uncontroverted. They were adduced by stipulations of record, exhibits admitted into evidence, or are related in descriptions by the trial court in the transcript of the oral statement of decision. Garcia's older son was in foster care from October 1989 to February 1991. During that time AFDC-foster care (§ 11400) benefits were provided for his support. During the same period Garcia received no income other than AFDC benefits based on her status as a single parent of her younger son. The parties stipulated that during a portion of this period Garcia was caring for her younger son, who was less than three years old. Garcia adduced a declaration of the custodian of her welfare records indicating that she received AFDC benefits from January through July 1990. The trial court "assumed" that Garcia was "caring for [her younger child] during [the] entire period of time [that her older child was in foster care]."

Garcia argued that it was inappropriate to make an award based upon her potential earning capacity because there was no evidence of "bad faith," i.e., that she shirked an obligation to seek work. The trial court responded as follows:

"Once again, it seems to me that based on what little evidence I have, I would not find that Ms. Garcia was unwilling to work, but rather that she chose not to do so, believing, understandably, that she needed to stay with her minor child.

"Now, having made those findings, the question becomes, does that mean that there is some bad faith on Ms. Garcia's part?

". . . Clearly there is no evidence that Ms. Garcia was actively suppressing her income or refusing opportunities to work when they presented

themselves. But, again, it seems to me that based on my previous analysis, that Ms. Garcia could have worked if she had chosen to do so, and her decision to stay at home with the baby, however laudable it may be, means that she chose to avoid working, and I would find that that is all that is necessary to decide that the use of the earning capacity standard is applicable to this particular case."

Garcia had also argued that she should not be held liable because her only income was AFDC benefits and she was the caretaker of her youngest child. The trial court responded as follows:

"Defendant has cited me to regulations and statutes which make it clear that welfare recipients—an AFDC recipient cannot be ordered to work when they have a child under I believe the age of five in the home. So, obviously, during the period of time in question, Ms. Garcia could not have been ordered to work to offset any of the AFDC payments she was getting.

"But that really doesn't seem to me to focus on the inquiry that is before me today. There is no case law that would indicate that if there is a child out of the home, that the various statutes and regulations cited by the defendant[] would preclude the AFDC recipient from reimbursing the county for money[ ] paid on behalf of the child out of the home."

In light of these conclusions, the trial court found that Garcia had the capacity to earn a minimum wage on a full-time basis during the period her son was in foster care, and entered judgment against her for $782.

## DISCUSSION

### I

Garcia contends that the trial court erred in making an award in favor of the County in light of her status as an AFDC recipient and single parent caretaker of a child under three. The County replies that Garcia failed to produce evidence showing that the work exemption statutes applied to her, that she should be responsible for support because public assistance costs were increased by the foster care placement, that the work exemption statutes are not designed to shield parents from liability for support, and that federal AFDC regulations formerly required that the earning potential of absent parents be considered in determining child support liability. None of these arguments is persuasive.

Section 11350 in pertinent part is as follows:[2]

"(a) In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents shall be obligated to the county for an amount equal to the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) The amount of support which would have been specified in an order for the support and maintenance of the family during the period of separation or desertion . . . ."

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) The amount of the obligation established under paragraph (2) of subdivision (a) shall be determined by using the appropriate child support guidelines currently in effect. . . ."

At the time of trial, the pertinent child support guidelines were set forth in California Rules of Court, rule 1274. (See Civ. Code, former § 4720.1, subd. (a)(1), Stats. 1990, ch. 1493.)[3] Under rule 1274 the amount of child support is calculated using a formula in which the parent's net monthly disposable income is a principal parameter. The rule provides that net income is generally calculated by subtracting from gross income certain prescribed deductions. (Rule 1274(g).) Excepted from gross income is "income derived from any public assistance program, eligibility for which is based on a determination of need." (Rule 1274(g)(3).) The rule also provides for an alternative to this income calculation: "The court *may*, in its discretion, consider the earning capacity of a parent in lieu of that parent's income, consistent with the best interests of the child." (Rule 1274(g)(2), italics added.)

---

[2]In the trial court and in this court both parties have assumed that the action is governed by section 11350 as amended at the time of trial, rather than the version of that statute in effect at the time that Garcia's obligation, if any, was incurred. At the time the obligation was incurred section 11350 contained no express reference to other statutes or regulations containing appropriate child support guidelines. It simply provided for an award in the "amount of aid paid . . . limited by such parent's reasonable ability to pay during that period in which aid was granted . . . ." (Stats. 1975, ch. 924, § 5, p. 2032.) Since, in the circumstances of this case we do not discern any substantive difference in the measure of the obligation under the two versions of the statute, we will accept the assumption that the amended version of section 11350 is applicable for the sake of discussion.

[3]These provisions are replicated in the current child support guidelines contained in Civil Code section 4721, subdivisions (a), (f), and (g). All references to a rule are to the California Rules of Court unless otherwise indicated.

The award cannot be predicated upon Garcia's income, since that consisted solely of AFDC benefits, a public assistance program, eligibility for which is based on a determination of need. The question is whether, in light of Garcia's status as a custodial parent, the trial court had discretion to predicate the award on her earning capacity under rule 1274(g)(2). Garcia argues that an award in these circumstances is beyond the range of discretion afforded by that provision. She relies principally upon an exemption from the work requirement for single parents of young children under statutes governing the AFDC work incentive programs, at sections 11300-11314.

The work incentive programs are intended to "reduce the incidence of persons with potential for self-support in existing [AFDC] caseloads . . . ." (§ 11302.) Except as provided in section 11310, subdivision (b), every AFDC recipient must "register for manpower services, training, and employment." (§ 11310, subd. (a).) The exception to which Garcia points is section 11310, subdivision (b)(6)(A)-(C), as follows:

"(b) The following individuals are not required to register:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

"(6) . . . . . . . . . . . . . . . . . . . . . . . ."

"(A) Has primary responsibility for personally providing care to a child under the age of three years. An individual meeting this criterium who volunteers to register may not be required to participate unless it is guaranteed that: (1) child care will be provided and (2) participation will not be required for more than 20 hours per week.

"(B) Has primary responsibility for personally providing care to a child aged three to five years, inclusive, unless it is guaranteed that: (1) child care will be provided and (2) participation will not be required for more than 20 hours per week.

"(C) In a family eligible for [AFDC] payments due to the unemployment of the principal wage earner, the exemption criteria contained in subparagraph (A) or (B) shall be applied to only one parent."

Garcia suggests that manifest in this exemption from the work incentive programs is a public policy that single parents with very young children should be allowed to decline work outside the home in order to care for these children, even when that results in the imposition on the government of costs of support under the AFDC program. We agree.

As explained in the concurring opinion of Justice Wiener in *Anderson* v. *Superior Court* (1989) 213 Cal.App.3d 1321, 1332-1337 [262 Cal.Rptr. 405],

the exemption from the work incentive programs is imposed by long-standing federal statutes governing the AFDC program reflecting a congressional determination "that these children should be cared for by their parents or relatives until they reach sufficient maturity to function well in day care outside the home." (*Id.* at pp. 1336-1337.) Under this policy there is no discretion in a section 11350 action to consider the "earning capacity" of a single parent caretaker of such a child in lieu of income as a basis for a support judgment.

■ The discretion conferred upon the court "is a discretion, governed by legal rules, to do justice according to law or to the analogies of the law, as near as may be." (*Lybecker* v. *Murray* (1881) 58 Cal. 186, 189.) That is to say, the range of judicial discretion is determined by analogy to the rules contained in the general law and in the specific body or system of law in which the discretionary authority is granted. As we recently explained in *City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1297-1298 [255 Cal.Rptr. 704]: "[t]he scope of discretion always resides in the particular law being applied . . . ." The legal principles that govern the subject of a discretionary action "are derived from the common law or statutes under which discretion is conferred." (*Id.* at p. 1298.)

Section 11350 applies to the restitution of AFDC benefits expended by a county. Its principal purpose is to preserve the public fisc. It must be construed in harmony with other AFDC statutes. ■ The statutory policy of exemption from the seek-work requirement is that a single parent must be free to choose to stay at home to provide care for very young children. To extend discretion conferred under section 11350 to consider the "earning capacity" of a person exempt under section 11310 from the requirement to generate earnings through employment violates that policy because the attribution of an earning capacity to such parents precludes their freedom to choose to stay at home to provide care for very young children.[4] To order reimbursement would effectively compel employment of single AFDC parents with very young children when there is a clearly expressed statutory policy to the contrary.

The County offers several arguments against this view. It argues that Garcia should be required to repay the AFDC the funds in issue because "by

[4]This is precisely what the trial court told Ms. Garcia: "Clearly there is no evidence that Ms. Garcia was actively suppressing her income or refusing opportunities to work when they presented themselves. But, again, it seems to me that based on my previous analysis, that Ms. Garcia could have worked if she had chosen to do so, and her decision to stay at home with the baby, however laudable it may be, means that she chose to avoid working, and I would find that that is all that is necessary to decide that the use of the earning capacity standard is applicable to this particular case."

placement of the child in the home of another, [she] increased the public liability for the support of the child." However, section 11310 manifests a legislative determination that the policy in support of parent-provided child care for very young children is stronger than the competing policy in favor of reducing the burden of AFDC on the public fisc by inducing recipients to seek and accept employment.

The County argues that work incentive programs "are designed to foster economic independence, rather than to shield parents from liability for the support of their children." This argument misses the point. Garcia does not argue that the exemption from registration for work was "designed" as a rule to govern section 11350 support. The point of her argument is that the statutes governing the work incentive program manifest a policy that single parents should not be penalized for declining work outside the home in order to provide child care to very young children.

The County argues that construing the range of discretion under section 11350 as we have conflicts with former section 302.53 of the Code of Federal Regulations, in effect during the period of foster care but repealed prior to trial. That regulation prescribes criteria for determining the amount of the support obligation assigned to the state by AFDC recipients.[5] One of the specified criteria is "[t]he earnings potential of the absent parent."

We discern no conflict with the regulation. The formula under rule 1274, does "take into consideration" the "earnings potential of the absent parent."

---

[5] The text of the former regulation is as follows.

"The State plan shall provide as follows:

"(a) There shall be a formula to be utilized by the IV-D agency in determining the amount of the support obligation pursuant to § 302.50 when there is no court order covering the obligation. Such formula must take into consideration the following criteria:

"(1) All earnings, income and resources of the absent parent including real and personal property;

"(2) The earnings potential of the absent parent;

"(3) The reasonable necessities of the absent parent;

"(4) The ability of the absent parent to borrow;

"(5) The needs of the child for whom the support is sought;

"(6) The amount of assistance which would be paid to the child under the full standard of need of the State's IV-A plan;

"(7) The existence of other dependents; and

"(8) Other reasonable criteria which the State may choose to incorporate.

"(b) The formula described in paragraph (a) of this section must be designed to insure, as a minimum, that the child for whom support is sought benefits from the income and resources of the absent parent on an equitable basis in comparison with any other minor children of the absent parent.

"(c) The formula described in paragraph (a) of this section shall be utilized to determine the required monthly support obligation, the amount of support obligation arrearage, if any, and the amount to be paid periodically against such arrearage."

However, as we have construed rule 1274 in order to harmonize the regulatory and statutory provisions, in the unusual case where a single parent has principal child care responsibility for a very young child, the "potential" is zero. The federal regulation, of course, must be construed in harmony with the federal AFDC statutes. As related, these statutes embody the policy in favor of parental choice to decline employment in order to care for very young children in their own homes.

The County also argues that Garcia is not entitled to reversal based upon this limitation of discretion to award support under section 11350. The County argues that she cannot claim that she was exempt from the training and employment registration requirements under section 11310 because "she made no showing that she was primarily responsible for the care of the child in her home." However, the evidence adduced showed that for at least a portion of the pertinent period Garcia was receiving AFDC as a single custodial parent of the child, the County stipulated that during a portion of this period Garcia was caring for her younger son, and the trial court assumed that she was the caretaker throughout the period.

As none of the County's arguments is persuasive, we conclude that Garcia's contention of error has merit. Insofar as the judgment awarded the County is predicated upon earning capacity for periods when Garcia was unemployed because she was the primary caretaker for her younger child, that error is prejudicial.

## II

Since the record shows that Garcia was not the caretaker of her youngest son during the entire period of foster care we also address her contention that an award of child support may not be predicated solely upon earning capacity in the absence of evidence that she shirked work. She relies upon decisions which limited reliance upon earning capacity to circumstances affording an inference of a "deliberate attempt . . . to avoid . . . financial family responsibilities by refusing to seek or accept gainful employment . . . ." (*Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408]; also see, e.g., *In re Marriage of Williams* (1984) 155 Cal.App.3d 57, 62 [202 Cal.Rptr. 10].) The County relies on *In re Marriage of Nolte* (1987) 191 Cal.App.3d 966 [236 Cal.Rptr. 706] and authorities which follow it. They hold that the *Philbin* rule was "alter[ed]" by the enactment of statutes directing that in fixing a support award ". . . the court shall also consider . . . the earning capacity of either or both parents." (*Id.*

at p. 972.)[6] We conclude that this provision does not alter the preexisting case law.

### A.

Under *Philbin* and its progeny reliance upon earning capacity was warranted only when it appeared there was "a deliberate attempt . . . to avoid . . . financial family responsibilities by refusing to seek or accept gainful employment . . . ." (See *Philbin, supra,* 19 Cal.App.3d at p. 121.) *Philbin* does not explain the basis for this limitation. It merely notes cases on both sides of the divide and follows the custom, without asserting a rationale.

*Webber* v. *Webber* (1948) 33 Cal.2d 153 [199 P.2d 934], upon which *Philbin* relies, does suggest a rationale. It says: "Not only the 'husband's [actual] earnings' but 'his ability to earn money' by the use of reasonable effort will affect the propriety of an alimony award." It reversed an award because the trial court expressly refused to consider the husband's ability to earn, even though he freely admitted that work was available and had "purposely refrained" from taking it. (*Id.* at p. 160.) "Here it plainly appears that there was no exercise of discretion in resolving the conflicting inferences which might reasonably have been drawn from the entire evidence ultimately adduced on the matter of financial relief sought by plaintiff . . . ." (*Id.* at p. 161.)

*Webber* suggests that whether earning capacity may be relied upon in lieu of actual income turns on the state of the evidence. A parent has the responsibility to "provide for [family] economic security by full participation in the work force to the extent possible," i.e., to make reasonable attempts to seek and accept employment to support a child. (E.g., § 11205.) The dispositive question is whether the evidence will sustain an inference that the party charged with support could, with reasonable effort, obtain employment generating the postulated (higher) income.

"An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) The ability to earn depends upon many considerations, among them "age, health, education, marketable skills, employment history, and the availability of employment opportunities." (*In re Marriage of Simpson, supra,* 4 Cal.4th at p. 234.) To avoid speculation, the ordinary measure of earning ability is the wages earned or being earned.

---

[6]This question presented by these divergent authorities was noted but not reached in the recent opinion *In re Marriage of Simpson* (1992) 4 Cal.4th 225, 233-234 [14 Cal.Rptr.2d 411, 841 P.2d 931].

(See generally, *McGann* v. *McGann* (1947) 82 Cal.App.2d 382, 390 [186 P.2d 424].) Unemployment alone does not permit an inference of fault. (See Unemp. Ins. Code, § 100.)

Thus, the rationale for the *Philbin* rule is that a fair and logical deduction that ability to earn exceeds actual income can only be made where there is evidence that the party to be charged has failed to make a reasonable effort to obtain employment that would generate a higher income. The proponent of the claim for past support has the burden of persuasion and the burden of production of evidence to establish the parent's ability to earn an income sufficient to defray support. (See Evid. Code, §§ 500, 550.) The proponent of support may employ discovery to ascertain the facts to satisfy these burdens. Accordingly, it is appropriate that in the absence of evidence affording an inference that earning capacity exceeds actual earnings the capacity to earn is equivalent to earnings.

### B.

That brings us to the question whether the *Philbin* rule has been overturned by a legislative policy choice. This view was first expressed in *In re Marriage of Nolte, supra*. The court noted the recent enactment of Civil Code former section 4721 and relied on its provision that to determine a mandatory minimum child support award "the court shall also consider, to the extent consistent with the best interests of the child or children, the earning capacity of either or both parents." (Civ. Code, former § 4721, subd. (a); Stats. 1984, ch. 1605, § 4, p. 5664.) *Nolte* notes the *Philbin* rule and states: "The above quoted section . . . appears to alter the historically punitive nature of such a consideration, mandating it 'to the extent consistent with the best interests of the child . . . .' " *Nolte* does not explain why the language compels that result, suggesting only that it is mandatory. (*In re Marriage of Nolte, supra*, 191 Cal.App.3d at p. 973.) *Nolte*'s passing surmise was reiterated and applied in *In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 859 [269 Cal.Rptr. 917], and in *In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1638 [16 Cal.Rptr.2d 345], again without explanation.

We discern nothing in the language of Civil Code former section 4721 to support the view that its enactment "alter[ed]" the *Philbin* rule. The use of "shall" does not compel that conclusion for it does not set out the criteria to be considered. In any event, we note that the "shall" has been amended to "may." "The court *may*, in its discretion, consider the earning capacity of a parent in lieu of that parent's income, consistent with the best interests of the child." (Civ. Code, § 4721, subd. (f)(2); Stats. 1992, ch. 46, § 9, operative July 1, 1992, italics added.)

Civil Code former section 4721's requirement of "consideration" of earning capacity is not an alteration of existing law; it simply reiterates the existing law. The case law had long called for awards to be based on earnings or, where appropriate, earning ability (e.g., *Webber*) and the preexisting statutory measure of the child support obligation, Civil Code former section 196, called for suitable support "taking into consideration the respective earnings or earning capacities of the parents." (Stats. 1980, ch. 1341, § 1, p. 4744.) Indeed, the Legislative Counsel's synopsis of Statutes 1984, chapter 1605 begins as follows:

"Existing law provides that a court may order either or both parents to pay child support in any amount necessary for the support, maintenance, and education of the child. In making such a determination, the court must consider various factors, including, but not limited to, each party's earning capacity, needs, age, health, and standard of living.

"This bill, operative July 1, 1985, would establish . . . ." (Legis. Counsel's Dig., Assem. Bill No. 1527, 4 Stats. 1984 (Reg. Sess.) Summary Dig., pp. 587-588.)

In sum, *Nolte* and its progeny are incorrect in concluding that the *Philbin* rule has been altered by statute. Nor, as related above, do we perceive the *Philbin* rule as "punitive" in nature. The statute's provision requiring "consider[ation]" of earning capacity is entirely consistent with the existing rule that earning capacity be deemed equivalent to actual income in the absence of evidence of unreasonable failure to seek or accept employment or more remunerative employment.

It is clear from the record that the trial court relied upon the incorrect view of the *Nolte* line of cases. As related, it found "there is no evidence that Ms. Garcia was actively suppressing her income or refusing opportunities to work when they presented themselves. . . ." Lacking evidence that Garcia was shirking work there is no substantial evidence to support an implied finding that Garcia had an earning capacity exceeding her actual income.

In the light of these conclusions none of the other points raised in the briefs require discussion.

### Disposition

The judgment is reversed. Garcia shall recover her costs of this appeal.

Sparks, J., concurred.

**NICHOLSON, J., Concurring and Dissenting.**—I concur insofar as we reverse the judgment in this case. I write separately, however, to explain why I believe the resolution of this judgment roll appeal should be based on factual grounds apparent on the face of the court's statement of decision. I disagree with the majority holding legislative policy limits the trial court's discretion to apply the earning capacity standard in this case.

California Rules of Court, rule 1274(g)(2) (rule 1274(g)(2)) states: "The court may, in its discretion, consider the earning capacity of a parent in lieu of that parent's income, consistent with the best interests of the child." Under a plain reading of the rule, "the best interests of the child" provide the only limitation on the court's discretion. The trial court was correct in applying the "best interests" test to Rickey M., the child for whom support was sought under Welfare and Institutions Code section 11350. It found "nothing in the record that indicates that it would be to Rickey's detriment or that it would not be in his best interests, if you will, that Ms. Garcia work." In an appeal on the judgment roll, the evidence is conclusively presumed to support the court's findings. (*National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 522 [258 Cal.Rptr. 506].)

The majority holds the trial court's discretion to consider that parent's earning capacity in determining support under rule 1274(g)(2) is *also* limited by the legislative policy which exempts from registration for manpower services, training and employment individuals with "primary responsibility for personally providing care to a child under the age of three years." (Welf. & Inst. Code, § 11310.) It bases this holding on two rationales. First, the majority says the policy behind the workfare exemption takes precedence over the policy which undergirds various statutory efforts to enforce support obligations. The latter policy seeks recoupment of benefit payments "to alleviate the burden on taxpayers and to ensure that as the number of needy children [rises] benefits to each child [will] not be reduced." (*City and County of San Francisco* v. *Thompson* (1985) 172 Cal.App.3d 652, 658 [218 Cal.Rptr. 445]; see also *In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 298 [139 Cal.Rptr. 349]; Welf. & Inst. Code, §§ 11350 and 11477.) Second, the majority states a finding that a parent exempted under Welfare and Institutions Code section 11310 has earning capacity would "effectively compel employment." I question both rationales.

The majority offers no authority to support its conclusion the policy that single parents with very young children should be allowed to decline work outside the home takes precedence over the policy favoring efforts to preserve the public fisc. The fact the workfare exemption policy is reflected in federal statutes and regulations governing the Aid to Families with

Dependent Children (AFDC) program proves nothing more or less than a shared legislative concern for the well-being of young children.

Indeed, the majority fails to mention long-standing legislative policy which affirms the parents' duty to support their minor children. Civil Code former section 4720.1, which directed the Judicial Council to adopt the child support guidelines set forth in rule 1274, states in relevant part: "(2) It is the intention of the Legislature that the courts shall adhere to the guidelines adopted by the Judicial Council pursuant to this section and shall depart from them only in exceptional circumstances. *A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.* In this regard, *the Legislature recognizes that a parent's circumstances and station in life are dependent upon a variety of factors*, including his or her earned and unearned income; *earning capacity*; assets; and the income of his or her subsequent spouse or nonmarital partner, to the extent that the obligated parent's basic living expenses are met by the spouse or other person, thus increasing the parent's disposable income." (Civ. Code, former § 4720.1, subd. (a)(2), italics added; see also Civ. Code, former § 196.)

Rule 1274(g)(2) grants the trial court discretion to consider a parent's earning capacity when calculating the support obligation. Competing legislative policies affecting earning capacity do not limit that discretion, but simply add to the mix of factors properly considered by the court in determining whether the earning capacity standard should be applied in a particular case.

Earning capacity is defined as ". . . the income the [parent] is reasonably capable of earning based upon the [parent's] age, health, education, marketable skills, employment history, and the availability of employment opportunities." (*In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234 [14 Cal.Rptr.2d 411, 841 P.2d 931].) Where, under substantive law, a fact is essential to the plaintiff's claim for relief, the burden of pleading and proving that fact is on the plaintiff. (Evid. Code, § 500.) Here, the county had the burden of establishing the elements of earning capacity before the court could use earning capacity standard to determine the amount of child support reimbursement Garcia was required to pay.

In my view, a custodial parent's exemption from workfare is a fact relevant to the element of employment opportunity. The legislative policy which supports that exemption in no way limits the court's discretion to consider the exemption along with other facts which might affect earning capacity.

I also question the majority's conclusion an order pursuant to Welfare and Institutions Code section 11350 "would effectively compel employment of single AFDC parents with very young children . . . ." (Maj. opn., *ante*, at p. 1778.) By using this rationale, the majority attempts to bring the case within the scope of *Anderson* v. *Superior Court* (1989) 213 Cal.App.3d 1321, 1332 [262 Cal.Rptr. 405]. *Anderson* differs from the case before us. In *Anderson*, the five plaintiffs were AFDC recipients, three of whom had preschool age children. They challenged family court orders requiring them to satisfy their child support obligations by undertaking job searches or voluntarily enrolling in California's work program, Greater Avenues for Independence (GAIN). (*Id.* at pp. 1324-1326.) On appeal, the court ruled the family court had violated plaintiffs' due process rights because it failed to give adequate notice of its procedures in imposing the job search orders.. (*Id.* at pp. 1330-1331.) In a concurring opinion, the author of the majority opinion stated his view the family court lacked the power to issue job search orders to AFDC recipients who are exempt from work requirements under both federal and state law. (*Id.* at pp. 1334-1335 (conc. opn. of Wiener, J.).)

Here, the court did not order Garcia to go to work. Unlike the orders in *Anderson*, which required plaintiffs to relinquish their federal and state exemptions from work requirements or risk reduction of AFDC benefits (*Anderson* v. *Superior Court, supra*, 213 Cal.App.3d at p. 1327), the trial court order in this case subjects Garcia to a civil money judgment. A judgment pursuant to Welfare and Institutions Code section 11350 may not be enforced by contempt. (*Crider* v. *Superior Court* (1993) 15 Cal.App.4th 227, 234 [18 Cal.Rptr.2d 757].) Nor may such a judgment be levied against AFDC benefits. (Code Civ. Proc., § 704.170.) As a practical matter, the judgment may be unenforceable.

Having concluded the trial court had discretion under rule 1274(g)(2) to consider Garcia's earning capacity, I would reverse on grounds the court's findings, as they appear on the face of the statement of decision, do not support its determination Garcia had the opportunity to work. On that question, the court stated: "*I have no evidence whatsoever about the opportunity that Ms. Garcia had to get a minimum wage job.*" (Italics added.) The court continued, "But I have been presented with no authority which would indicate that the court cannot assume that there is some opportunity for a minimum wage job absent some showing by the defendant that that opportunity doesn't exist. [¶] The court can't ignore the fact that day in and day out in this court I deal with people who are struggling with the consequences of our present recession and struggling with the consequences of unemployment, and yet they are attempting to get minimum wage jobs, and I never hear the argument that those jobs don't exist." In the absence of proof of

opportunity, the court improperly shifted the burden of proof of lack of opportunity to Garcia.

In addition, the court appears to take judicial notice of other proceedings to support its statement, "I never hear the argument that those jobs don't exist." What the court heard is irrelevant. The question is whether Garcia had employment opportunities available to her, that is, "an employer who [was] willing to hire." (*In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1372 [263 Cal.Rptr. 243].)